**OUTTEN & GOLDEN LLP**
Adam T. Klein
Rachel Bien
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**LOVELL STEWART HALEBIAN JACOBSON LLP**
John Halebian
Adam Mayes
317 Madison Avenue, 21st Floor
New York, NY 10017
Telephone: (212) 500-5010

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY LLOYD and LAWRENCE KAUFMANN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | **No. 11 Civ. 9305 (LTS)** |
| v. | |
| J.P. MORGAN CHASE & CO. and CHASE INVESTMENT SERVICES CORP., | |
| Defendants. | |
| KENNETH CIULLO, individually and on behalf of all others similarly situated, | |
| Plaintiff, | **No. 12 Civ. 2197 (LTS)** |
| v. | |
| J.P. MORGAN CHASE & CO. and CHASE INVESTMENT SERVICES CORP., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL HISTORY............................................................................................... 2

THE PARTIES.................................................................................................................. 3

      I.    Chase ........................................................................................................ 3

      II.   Plaintiffs .................................................................................................. 3

      III.  Opt-In Plaintiffs ...................................................................................... 3

      IV.  Other Declarants ...................................................................................... 4

STATEMENT OF FACTS ................................................................................................ 5

      I.    All Financial Advisors Have the Same Primary Job Duty........................ 5

      II.   Chase Compensates Financial Advisors Based on their Sales................... 7

      III.  Chase Requires Financial Advisors to Work Similar Schedules. .............. 7

      IV.  All Financial Advisors Have to Meet the Same
           Minimal Job Qualifications...................................................................... 8

ARGUMENT ................................................................................................................... 9

      I.    Court-Authorized Notice Is Fair and Efficient, and Advances the FLSA's Goals..... 9

      II.   Expeditious Notice Is Necessary to Protect the Rights of Financial Advisors. ......... 9

      III.  The Legal Standard in the Second Circuit for Conditional Certification. ............... 10

      IV.  Plaintiffs Exceed the Low Burden for Conditional Certification. ........................... 10

            A.  Plaintiffs and Financial Advisors Are Similarly Situated With
                Respect to Their Job Duties. .................................................................... 12

            B.  Plaintiffs and Financial Advisors Are Similarly Situated With
                Respect to Their FLSA Claims. ............................................................... 13

            C.  The Court Can Grant Conditional Certification Even If Chase's
                Exemption Defenses Require Factual Analysis.......................................... 16

      V.   The Court Can Grant Conditional Certification Despite Claims
          of Varying Job Duties. ........................................................................... 17

VI. The Court Should Approve Plaintiffs' Proposed Notice. ......................................... 19

CONCLUSION....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ahmed v. T.J. Maxx Corp.*,
   No. 10 Civ. 3609, 2012 WL 5507329 (E.D.N.Y. Nov. 14, 2012) .........................................13

*Aros v. United Rentals, Inc*.,
   269 F.R.D. 176 (D. Conn. 2010) .........................................................................................18

*Bouder v. Prudential Financial, Inc*.,
   No. 06 Civ. 4359, 2008 WL 7898281 (D.N.J. Mar. 27, 2008) ...............................................11

*Braunstein v. E. Photo. Labs., Inc.*,
   600 F.2d 335 (2d Cir. 1975)............................................................................................9, 10

*Chowdhury v. Duane Reade, Inc.*,
   No. 06 Civ. 2295, 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007) ..........................................17

*Cohen v. Lehrman Grp.*,
   686 F. Supp. 2d 317 (S.D.N.Y. 2010)...........................................................................16, 17

*Cruz v. Hook-Superx, LLC*,
   09 Civ. 7717, 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010) .................................12, 13, 17, 18

*Cuzco v. Orion Builders, Inc.*,
   477 F. Supp. 2d 628 (S.D.N.Y. 2007)....................................................................................9

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ..........................................................................14, 17, 18, 19

*Davis v. JP Morgan Chase & Co.*,
   587 F.3d 529 (2d Cir. 2009)...................................................................................................14

*Francis v. A & E Stores, Inc.*,
   No. 06 Civ. 1638, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) ....................................12, 17

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
   282 F. Supp. 2d 101 (S.D.N.Y. 2003).....................................................................................17

*Hoffmann v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997).............................................................................................9

*Hoffmann-La Roche v. Sperling*,
   493 U.S. 165 (1989)..........................................................................................................9, 19

*Holbrook v. Smith & Hawken, Ltd.*,
   246 F.R.D. 103,106 (D. Conn. 2007).......................................................................................19

*Indergit v. Rite Aid Corp.*,
    Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 2465488 (S.D.N.Y. June 16, 2010) .....16, 17, 19

*Jacobsen v. Stop & Shop Supermarket Co.*,
    No. 02 Civ. 5915, 2003 WL 21136308 (S.D.N.Y. May 15, 2003)........................................17

*Kadden v. VisuaLex*,
    No. 11 Civ. 4892, 2012 WL 4354781 (S.D.N.Y. Sept. 24, 2012).........................................15

*Lynch v. United Servs. Auto. Ass'n*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007).................................................................................9, 12

*Masson v. Ecolab, Inc.*,
    No. 04 Civ. 4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ........................................12

*Morgan v. Family Dollar Stores*,
    551 F.3d 1233, 1259 (11th Cir. 2008) .......................................................................10,13, 16

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)........................................................................................ passim

*Pendlebury v. Starbucks Coffee Co.*,
    No. 04 Civ. 80521, 2005 WL 84500 (S.D. Fla. Jan. 3, 2005) .................................................18

*Perkins v. S. New Eng. Tel. Co.*,
    669 F. Supp. 2d 212 (D. Conn. 2009) ..................................................................................16

*Pippins v. KPMG LLP*,
    No. 11 Civ. 0377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012)......................................... passim

*In re RBC Dain Rauscher Overtime Litigation*,
    703 F. Supp. 2d 910 (D. Minn. 2010) ..................................................................................11

*Ruggles v. WellPoint, Inc.*,
    591 F. Supp. 2d 150 (N.D.N.Y. 2008) ..................................................................................10

*Shajan v. Barolo, Ltd.*,
    10 Civ. 1385, 2010 WL 2218095 (S.D.N.Y. June 2, 2010)....................................9, 10, 14, 17

*Sipas v. Sammy's Fishbox, Inc.*,
    No. 05 Civ. 10319, 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006)........................................12

## STATUTES

29 U.S.C. § 207(a)(1).................................................................................................................13

29 U.S.C. § 216(b) .......................................................................................................................9

**REGULATIONS**

29 C.F.R. § 541.100(a)(2)...................................................................................................15

29 C.F.R. § 541.203(b) .......................................................................................................15

29 C.F.R. § 541.301............................................................................................................14

29 C.F.R. § 541.500(a)........................................................................................................15

29 C.F.R. § 541.601............................................................................................................16

## <u>PRELIMINARY STATEMENT</u>

Plaintiffs Jeffrey Lloyd, Lawrence Kaufmann, and Kenneth Ciullo ("Plaintiffs") submit this Memorandum of Law in Support of their Motion for Conditional Certification and Court Authorized Notice.  Plaintiffs' motion should be granted because they exceed their low burden at this early stage of the case of making "some showing" that they and other employees are "similarly situated with respect to their job requirements and with regard to their pay provisions" and were "classified as exempt pursuant to a common policy or scheme." *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation marks omitted).  Through declarations submitted by 13 Financial Advisors and Chase's own corporate documents, Plaintiffs more than meet their low burden to show that they and other Financial Advisors performed similar duties under similar compensation terms and were uniformly classified as exempt regardless of the state or Chase bank branch in which they worked.

J.P. Morgan Chase & Co. and Chase Investment Services Corp. ("Chase") classify their Financial Advisors, whose primary duty is to sell Chase's financial products to individuals at Chase branches, as "exempt" from the overtime protections of the Fair Labor Standards Act ("FLSA") and fail to pay them overtime for hours that they work over 40 in a workweek.[1] Through this Motion, Plaintiffs seek to protect the rights of Financial Advisors across the country by sending them notice of this action so that they can make an informed decision as whether to join it and seek to recover the unpaid wages that Chase owes them.

Time is of the essence with respect to this Motion.  The statute of limitations for each Financial Advisor's FLSA claim will continue to run until he or she affirmatively opts into the

---

[1]     Although not at issue on this Motion, Chase also makes illegal deductions against Financial Advisors' earnings in violation of Section 193 of the New York Labor Law. *See Ciullo v. J.P. Morgan Chase & Co.*, No. 12 Civ. 2197, ECF No. 1 (Compl.) ¶¶ 57-62.

case.  As a result, potential collective members' claims are diminished (or extinguished) each day.

## PROCEDURAL HISTORY

Plaintiffs Jeffrey Lloyd and Ellen Szymkiewicz filed a Class Action Complaint ("Compl.") on December 19, 2011.  Decl. of Rachel Bien in Supp. of Mot. for Conditional Cert. ("Bien Decl.") ¶ 2.[2]  On March 23, 2012, Plaintiff Kenneth Ciullo filed a separate action, *Ciullo v. J.P. Morgan Chase & Co.*, No. 12 Civ. 2197, which the Court accepted as a related case on June 6, 2012.  *Id.* ¶ 3.

On February 29, 2012, Chase moved to transfer the *Lloyd* action to the Central District of California.  ECF No. 19.  On August 14, 2012, the Court denied the motion to transfer.  ECF No. 36.  On November 16, 2012, the Court held a case management conference during which it entered a case management schedule.  *See* ECF No. 51.

Discovery is ongoing.  On September 17, 2012, Defendants served discovery requests on Plaintiff Lloyd to which he responded on October 17, 2012 and served responsive documents on November 13, 2012.  Bien Decl. ¶ 4.  Defendants also served discovery requests on Plaintiff Ciullo on September 17, 2012.  *Id.* ¶ 5.  On October 2, 2012, Plaintiffs served document requests and interrogatories on Defendants to which they responded on November 19, 2012.  *Id.* ¶ 6.  Defendants' production of documents is ongoing.  *Id.*

On September 21, 2012, Plaintiff Ciullo filed a motion with the Judicial Panel on Multidistrict Litigation to consolidate this action with other actions pending in California.  *Id.* ¶ 7.  In the course of the briefing, Chase opposed the transfer of the California actions to the

---

[2]      Unless otherwise indicated, all exhibits are attached to the Bien Decl.  On April 19, 2012, Plaintiffs filed a First Amended Class Action Complaint ("Am. Compl."), replacing named plaintiff Szymkiewicz with Lawrence Kaufmann.  ECF No. 31.  On November 27, 2012, the Court granted a stipulation dismissing Ms. Szymkiewicz's claims with prejudice.  ECF No. 54.

Southern District of New York and sought to transfer the New York actions to be consolidated with the California actions. *Id*. A hearing on the motion took place on November 29, 2012. *Id*. The Panel ruled that it would not transfer the California actions to New York or transfer the New York actions to California. *Id*; Ex. A (Panel Order).

## THE PARTIES

### I. Chase

J.P. Morgan Chase & Co. is a Delaware corporation with its corporate headquarters in New York City.[3] Chase Investment Services Corp. is a Delaware corporation with offices in New York City.[4]

### II. Plaintiffs

Plaintiff Jeffrey Lloyd worked for Chase as a Financial Advisor in New Jersey from approximately January 2008 through approximately June 2011.[5] Plaintiff Lawrence Kaufmann worked for Chase as a Financial Advisor in New York from approximately May 2009 through approximately October 2011.[6] Plaintiff Ciullo worked for Chase as a Financial Advisor in New York from approximately August 2008 through approximately April 2011.[7]

### III. Opt-In Plaintiffs

Opt-In Plaintiff Susan Hyman worked for Chase as a Financial Advisor in Elmwood Park, New Jersey from approximately May 2009 through approximately March 2011.[8] Opt-In Plaintiff Alan Krichman worked for Chase as a Financial Advisor in Paramus, New Jersey from approximately May 2009 through approximately April 2011.[9] Opt-In Plaintiff Rob Johnson

---

[3]    Am. Compl. ¶ 28; Answer ("Ans.") ¶ 28.
[4]    Am. Compl. ¶ 29.
[5]    Am. Compl. ¶ 24.
[6]    Am. Compl. ¶ 19.
[7]    Ex. S (Ciullo Decl.) ¶¶ 1-2.
[8]    Ex. I (Hyman Decl.) ¶¶ 1-2.
[9]    Ex. J (Krichman Decl.) ¶¶ 1-2.

3

worked for Chase as a Financial Advisor in Dallas, Texas from approximately June or July 2010 through approximately June or July 2011.[10]  Opt-In Plaintiff Peter Piccoli worked for Chase as a Financial Advisor in Melbourne, Palm Bay, and Cocoa, Florida from approximately June 2010 through approximately November 2011.[11]  Opt-In Plaintiff Joshua Strouse worked for Chase as a Financial Advisor in Chicago, Illinois from approximately January 2008 through approximately July 2009, and in Columbus, Ohio from approximately August 2009 through approximately September 2011.[12]  Opt-In Plaintiff Jennifer Zaat-Hetelle worked for Chase as a Financial Advisor in Huntington Beach, California from approximately August 2009 through approximately February 2011.[13]  Opt-In Plaintiff Scott VanHoogstraat worked for Chase as a Financial Advisor in Mesa, Arizona and Indianapolis, Indiana from approximately March 2010 through approximately August 2011.[14]

### IV. Other Declarants

Amauri Leo Do Carmo worked for Chase as a Financial Advisor in Huntington Beach and Fountain Valley, California from approximately April 2010 through approximately February 2011.[15]  Robin Spencer worked for Chase as a Financial Advisor Associate in Huntington Woods, Detroit, and Madison Heights, Michigan from approximately October 2010 through approximately June 2012.[16]  Samuel Fuentes worked for Chase as a Financial Advisor in Dallas and Irving, Texas from approximately October 2009 through approximately November 2011.[17]

---

[10]     Ex. K (Johnson Decl.) ¶¶ 1-2.
[11]     Ex. L (Piccoli Decl.) ¶¶ 1-2.
[12]     Ex. M (Strouse Decl.) ¶¶ 1-3.
[13]     Ex. N (Zaat-Hetelle Decl.) ¶¶ 1-2.
[14]     Ex. O (VanHoogstraat Decl.) ¶¶ 1-2.
[15]     Ex. P (Do Carmo Decl.) ¶¶ 1-2.
[16]     Ex. Q (Spencer Decl.) ¶¶ 1-2.
[17]     Ex. R (Fuentes Decl.) ¶¶ 1-2.

## STATEMENT OF FACTS

**I.** **All Financial Advisors Have the Same Primary Job Duty.**

All Financial Advisors and Financial Advisor Associates[18] (together, "Financial Advisors") have the same primary job duty: selling Chase's financial products to individuals in Chase branches.[19]  Chase's training manual for Financial Advisors also describes them as "sales specialists," who engage in a "sales process."[20]  Financial Advisors' primary duty does not vary depending on the branch to which they are assigned or the state in which they work.[21]

In carrying out their primary duty, Financial Advisors perform the same or very similar day-to-day tasks, all of which are directed towards their goal of selling Chase products:

(1)     Making telephone calls to potential customers, selected from a list of names furnished by Chase, to tell them about Chase products and to attempt to sign them up as customers;[22]

(2)     Meeting with potential customers at Chase branches to attempt to sign them up for Chase's products;[23]

---

[18]     Financial Advisor Associates have the same primary job duty and perform the same types of tasks as Financial Advisors.  *See* Ex. Q (Spencer Decl.) ¶¶ 1, 5-8; Ex. E (Financial Advisor Associate Job Postings).

[19]     Ex. E (Job Postings); Ex. G (Lloyd Decl.) ¶¶ 4-5, 7; Ex. H (Kaufmann Decl.) ¶¶ 4, 6, 8; Ex. I (Hyman Decl.) ¶¶ 4-5, 7; Ex. J (Krichman Decl.) ¶¶ 3, 5, 7; Ex. K (Johnson Decl.) ¶¶ 3, 7, 9; Ex. L (Piccoli Decl.) ¶¶ 4-5, 7; Ex. M (Strouse Decl.) ¶¶ 5, 7; Ex. N (Zaat-Hetelle Decl.) ¶¶ 3, 6, 8; Ex. O (VanHoogstraat Decl.) ¶¶ 3, 6, 8; Ex. P (Do Carmo Decl.) ¶¶ 3, 5, 7; Ex. Q (Spencer Decl.) ¶¶ 3, 5, 7; Ex. R (Fuentes Decl.) ¶¶ 3, 5, 7; Ex. S (Ciullo Decl.) ¶¶ 4-5, 7.

[20]     Ex. B (Training Workbook) at 8, 23-24, 29, 32, 33, 36.

[21]     Ex. G (Lloyd Decl.) ¶ 27; Ex. H (Kaufmann Decl.) ¶ 29; Ex. I (Hyman Decl.) ¶ 26; Ex. J (Krichman Decl.) ¶ 28; Ex. K (Johnson Decl.) ¶ 29; Ex. L (Piccoli Decl.) ¶ 26; Ex. M (Strouse Decl.) ¶ 26; Ex. N (Zaat-Hetelle Decl.) ¶ 26; Ex. O (VanHoogstraat Decl.) ¶ 28; Ex. P (Do Carmo Decl.) ¶ 26; Ex. Q (Spencer Decl.) ¶ 26; Ex. R (Fuentes Decl.) ¶ 26; Ex. S (Ciullo Decl.) ¶ 27.

[22]     Ex. B (Training Workbook) at 15-17; Ex. G (Lloyd Decl.) ¶ 7; Ex. H (Kaufmann Decl.) ¶ 8; Ex. I (Hyman Decl.) ¶ 7; Ex. J (Krichman Decl.) ¶ 7; Ex. K (Johnson Decl.) ¶ 9; Ex. L (Piccoli Decl.) ¶ 7; Ex. M (Strouse Decl.) ¶ 7; Ex. N (Zaat-Hetelle Decl.) ¶ 8; Ex. O (VanHoogstraat Decl.) ¶ 8; Ex. P (Do Carmo Decl.) ¶ 7; Ex. Q (Spencer Decl.) ¶ 7; Ex. R (Fuentes Decl.) ¶ 7; Ex. S (Ciullo Decl.) ¶ 7.

[23]     Ex. G (Lloyd Decl.) ¶ 7; Ex. H (Kaufmann Decl.) ¶ 8; Ex. I (Hyman Decl.) ¶ 7; Ex. J

(3)     Soliciting individuals who walk into Chase branches to attempt to sign them up as customers;[24] and

(4)     Interacting with Chase bankers in the branches in order to attempt to arrange meetings with their customers in order to sell them financial products.[25]

Financial Advisors describe their work as primarily transactional in nature.[26]  They do not set Chase's policies or perform other managerial or administrative functions for Chase.[27]  Chase pushes Financial Advisors to prioritize sales over everything else, and the vast majority of their time is spent attempting to sell financial products to new or current customers.[28]  The time that Financial Advisors spend obtaining information from potential customers and advising them is related to their primary duty of selling financial products.[29]

---

(Krichman Decl.) ¶ 7; Ex. K (Johnson Decl.) ¶ 9; Ex. L (Piccoli Decl.) ¶ 7; Ex. M (Strouse Decl.) ¶ 7; Ex. N (Zaat-Hetelle Decl.) ¶ 8; Ex. O (VanHoogstraat Decl.) ¶ 8; Ex. P (Do Carmo Decl.) ¶ 7; Ex. Q (Spencer Decl.) ¶ 7; Ex. R (Fuentes Decl.) ¶ 7; Ex. S (Ciullo Decl.) ¶ 7.

[24]     Ex. B (Training Workbook) at 11; Ex. H (Kaufmann Decl.) ¶ 8; Ex. J (Krichman Decl.) ¶ 7; Ex. K (Johnson Decl.) ¶ 9; Ex. N (Zaat-Hetelle Decl.) ¶ 8; Ex. O (VanHoogstraat Decl.) ¶ 8; Ex. P (Do Carmo Decl.) ¶ 7; Ex. Q (Spencer Decl.) ¶ 7.

[25]     Ex. B (Training Workbook) at 20; Ex. G (Lloyd Decl.) ¶ 7; Ex. H (Kaufmann Decl.) ¶ 8; Ex. I (Hyman Decl.) ¶ 7; Ex. J (Krichman Decl.) ¶ 7; Ex. L (Piccoli Decl.) ¶ 7; Ex. M (Strouse Decl.) ¶ 7; Ex. N (Zaat-Hetelle Decl.) ¶ 8; Ex. O (VanHoogstraat Decl.) ¶ 8; Ex. Q (Spencer Decl.) ¶ 7; Ex. R (Fuentes Decl.) ¶ 7; Ex. S (Ciullo Decl.) ¶ 7.

[26]     Ex. H (Kaufmann Decl.) ¶ 12; Ex. K (Johnson Decl.) ¶ 13; Ex. L (Piccoli Decl.) ¶ 11.

[27]     *See* Ex. G (Lloyd Decl.) ¶¶ 12-13; Ex. H (Kaufmann Decl.) ¶¶ 13-14; Ex. I (Hyman Decl.) ¶¶ 12-13; Ex. J (Krichman Decl.) ¶¶ 12-13; Ex. K (Johnson Decl.) ¶¶ 14-15; Ex. L (Piccoli Decl.) ¶¶ 12-13; Ex. M (Strouse Decl.) ¶¶ 12-13; Ex. N (Zaat-Hetelle Decl.) ¶¶ 12-13; Ex. O (VanHoogstraat Decl.) ¶¶ 13-14; Ex. P (Do Carmo Decl.) ¶¶ 12-13; Ex. Q (Spencer Decl.) ¶¶ 12-13; Ex. R (Fuentes Decl.) ¶¶ 12-13; Ex. S (Ciullo Decl.) ¶¶ 12-13.

[28]     Ex. B (Training Workbook) at 23, 29, 32-33, 36 (instructing Financial Advisors to "close the sale"); Ex. G (Lloyd Decl.) ¶¶ 9, 11; Ex. H (Kaufmann Decl.) ¶¶ 10, 12; Ex. I (Hyman Decl.) ¶¶ 9, 11; Ex. J (Krichman Decl.) ¶¶ 9, 11; Ex. K (Johnson Decl.) ¶¶ 11, 13; Ex. L (Piccoli Decl.) ¶¶ 9, 11; Ex. M (Strouse Decl.) ¶¶ 9, 11; Ex. N (Zaat-Hetelle Decl.) ¶ 11; Ex. O (VanHoogstraat Decl.) ¶¶ 10, 12; Ex. P (Do Carmo Decl.) ¶¶ 9, 11; Ex. Q (Spencer Decl.) ¶¶ 9, 11; Ex. R (Fuentes Decl.) ¶¶ 9, 11; Ex. S (Ciullo Decl.) ¶¶ 9, 11.

[29]     Ex. G (Lloyd Decl.) ¶ 10; Ex. H (Kaufmann Decl.) ¶ 11; Ex. I (Hyman Decl.) ¶ 10; Ex. J (Krichman Decl.) ¶ 10; Ex. K (Johnson Decl.) ¶ 12; Ex. L (Piccoli Decl.) ¶ 10; Ex. M (Strouse Decl.) ¶ 10; Ex. N (Zaat-Hetelle Decl.) ¶ 10; Ex. O (VanHoogstraat Decl.) ¶ 11; Ex. P (Do Carmo Decl.) ¶ 10; Ex. Q (Spencer Decl.) ¶ 10; Ex. R (Fuentes Decl.) ¶ 10; Ex. S (Ciullo Decl.) ¶ 10.

The overwhelming majority of Financial Advisors' clients purchase financial products in their personal capacity and not on behalf of a business or institutional investor.[30]

## II. **Chase Compensates Financial Advisors Based on their Sales.**

Chase pays all Financial Advisors according to the same compensation terms and conditions and uniformly classifies them as exempt from the overtime requirements of the FLSA.[31]  Chase does not pay Financial Advisors overtime when they work over forty hours in a workweek.[32]

Financial Advisors are paid a base salary, consisting of a forgivable draw against commissions, and may earn commissions if they meet Chase's sales goals.[33]  Chase does not compensate Financial Advisors for providing advice to customers in the absence of a sale.[34]

## III. **Chase Requires Financial Advisors to Work Similar Schedules.**

Chase requires all Financial Advisors to work similar schedules, including work at the branch after hours and on the weekends.  Financial Advisors typically must arrive at their branch before the branch opens to participate in a "morning huddle" with the rest of the branch's sales staff.[35]  In addition to working during the branch's regular business hours, Financial Advisors are

---

[30]     Ex. G (Lloyd Decl.) ¶ 6; Ex. H (Kaufmann Decl.) ¶ 7; Ex. I (Hyman Decl.) ¶ 6; Ex. J (Krichman Decl.) ¶ 6; Ex. K (Johnson Decl.) ¶ 8; Ex. L (Piccoli Decl.) ¶ 6; Ex. M (Strouse Decl.) ¶ 6; Ex. N (Zaat-Hetelle Decl.) ¶ 7; Ex. O (VanHoogstraat Decl.) ¶ 7; Ex. P (Do Carmo Decl.) ¶ 6; Ex. Q (Spencer Decl.) ¶ 6; Ex. R (Fuentes Decl.) ¶ 6; Ex. S (Ciullo Decl.) ¶ 6.

[31]     Compl. ¶¶ 54; Ans. Fifth Defense.

[32]     Ex. G (Lloyd Decl.) ¶ 22; Ex. H (Kaufmann Decl.) ¶ 23; Ex. I (Hyman Decl.) ¶ 21; Ex. J (Krichman Decl.) ¶ 22; Ex. K (Johnson Decl.) ¶ 23; Ex. L (Piccoli Decl.) ¶ 20; Ex. M (Strouse Decl.) ¶ 20; Ex. N (Zaat-Hetelle Decl.) ¶ 22; Ex. O (VanHoogstraat Decl.) ¶ 22; Ex. P (Do Carmo Decl.) ¶ 20; Ex. Q (Spencer Decl.) ¶ 20; Ex. R (Fuentes Decl.) ¶ 20; Ex. S (Ciullo Decl.) ¶ 22.

[33]     *See* Ex. C (Financial Advisor Compensation Plans); Ex. D (Lloyd Offer Letter).

[34]     Ex. G (Lloyd Decl.) ¶ 17; Ex. H (Kaufmann Decl.) ¶ 18; Ex. I (Hyman Decl.) ¶ 16; Ex. J (Krichman Decl.) ¶ 17; Ex. K (Johnson Decl.) ¶ 19; Ex. L (Piccoli Decl.) ¶ 17; Ex. M (Strouse Decl.) ¶ 17; Ex. N (Zaat-Hetelle Decl.) ¶ 17; Ex. O (VanHoogstraat Decl.) ¶ 19; Ex. P (Do Carmo Decl.) ¶ 17; Ex. Q (Spencer Decl.) ¶ 17; Ex. R (Fuentes Decl.) ¶ 17; Ex. S (Ciullo Decl.) ¶ 17.

[35]     Ex. H (Kaufmann Decl.) ¶¶ 24-25; Ex. J (Krichman Decl.) ¶¶ 23-24; Ex. K (Johnson Decl.) ¶¶ 24-25; Ex. L (Piccoli Decl.) ¶¶ 21-22; Ex. M (Strouse Decl.) ¶¶ 21-22; Ex. N (Zaat-

also typically required to work after hours at "call nights" one or more times a month, during which they call potential customers from a list provided by Chase to attempt to schedule appointments to sell them Chase products.[36]   Chase also requires Financial Advisors to work on Saturdays during the braches' weekend hours.[37]

### IV. All Financial Advisors Have to Meet the Same Minimal Job Qualifications.

Chase requires all Financial Advisors to have the same minimal qualifications.[38]   Chase does not require Financial Advisors to have attained a college degree or advanced degree.[39] Chase requires all Financial Advisors to have Series 7 and Series 63 licenses.[40]

Financial Advisors learn the skills that they need to know to perform their duties from Chase's training and on the job.[41]   The training instructs Financial Advisors on sales methods to obtain new customers, including providing them with sample sales scripts to use with customers,

---

Hetelle Decl.) ¶¶ 23-24; Ex. O (VanHoogstraat Decl.) ¶¶ 23-24, 26; Ex. P (Do Carmo Decl.) ¶¶ 21-22; Ex. Q (Spencer Decl.) ¶¶ 21-22; Ex. R (Fuentes Decl.) ¶¶ 21-22.

[36]   Ex. G (Lloyd Decl.) ¶¶ 24-25; Ex. H (Kaufmann Decl.) ¶¶ 26-27; Ex. I (Hyman Decl.) ¶¶ 23-24; Ex. J (Krichman Decl.) ¶¶ 25-26; Ex. K (Johnson Decl.) ¶¶ 26-27; Ex. L (Piccoli Decl.) ¶¶ 23-24; Ex. M (Strouse Decl.) ¶¶ 23-24; Ex. N (Zaat-Hetelle Decl.) ¶¶ 25-26; Ex. O (VanHoogstraat Decl.) ¶ 27; Ex. P (Do Carmo Decl.) ¶¶ 23-24; Ex. Q (Spencer Decl.) ¶¶ 23-24; Ex. R (Fuentes Decl.) ¶¶ 23-24; Ex. S (Ciullo Decl.) ¶¶ 24-25.

[37]   Ex. G (Lloyd Decl.) ¶ 26, 7; Ex. H (Kaufmann Decl.) ¶ 28; Ex. I (Hyman Decl.) ¶ 25; Ex. J (Krichman Decl.) ¶ 27; Ex. K (Johnson Decl.) ¶ 28; Ex. L (Piccoli Decl.) ¶ 25; Ex. M (Strouse Decl.) ¶ 25; Ex. N (Zaat-Hetelle Decl.) ¶ 27; Ex. O (VanHoogstraat Decl.) ¶¶ 23-24; Ex. P (Do Carmo Decl.) ¶ 25; Ex. Q (Spencer Decl.) ¶ 25; Ex. R (Fuentes Decl.) ¶ 25; Ex. S (Ciullo Decl.) ¶ 26.

[38]   See Ex. E (Job Postings).

[39]   See Ex. E (Job Postings); Ex. G (Lloyd Decl.) ¶ 16; Ex. H (Kaufmann Decl.) ¶ 17; Ex. I (Hyman Decl.) ¶ 15; Ex. J (Krichman Decl.) ¶ 16; Ex. K (Johnson Decl.) ¶ 18; Ex. L (Piccoli Decl.) ¶ 16; Ex. M (Strouse Decl.) ¶ 16; Ex. N (Zaat-Hetelle Decl.) ¶ 16; Ex. O (VanHoogstraat Decl.) ¶ 18; Ex. P (Do Carmo Decl.) ¶ 16; Ex. Q (Spencer Decl.) ¶ 16; Ex. R (Fuentes Decl.) ¶ 16; Ex. S (Ciullo Decl.) ¶ 16.

[40]   Ex. E (Job Postings).

[41]   Ex. G (Lloyd Decl.) ¶¶ 14-16; Ex. H (Kaufmann Decl.) ¶¶ 15-17; Ex. I (Hyman Decl.) ¶¶ 14-15; Ex. J (Krichman Decl.) ¶¶ 14-16; Ex. K (Johnson Decl.) ¶¶ 16-18; Ex. L (Piccoli Decl.) ¶¶ 14-16; Ex. M (Strouse Decl.) ¶¶ 14-16; Ex. N (Zaat-Hetelle Decl.) ¶¶ 14-16; Ex. O (VanHoogstraat Decl.) ¶¶ 15-18; Ex. P (Do Carmo Decl.) ¶¶ 14-16; Ex. Q (Spencer Decl.) ¶¶ 14-16; Ex. R (Fuentes Decl.) ¶¶ 14-16; Ex. S (Ciullo Decl.) ¶¶ 14-16.

information that Financial Advisors must discuss with customers, and the products that Financial Advisors sell.[42]

## ARGUMENT

### I.   Court-Authorized Notice Is Fair and Efficient, and Advances the FLSA's Goals.

The FLSA authorizes private parties to bring an overtime claim "[o]n behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b).  In furtherance of the FLSA's "broad remedial purpose," courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings.  *Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979); *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) ("[D]istrict courts have 'discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs"); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007); *Shajan v. Barolo, Ltd.*, 10 Civ. 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010).

Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by pooling resources," and enable the "efficient resolution in one proceeding of common issues of law and fact."  *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).  Nationwide notice here will provide collective members with a single forum in which to determine whether Chase's overtime policies are lawful.

### II.   Expeditious Notice Is Necessary to Protect the Rights of Financial Advisors.

Employees must receive timely notice in order for the "intended benefits of the collective action . . . to accrue."  *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007).  The FLSA's statute of limitations runs until an employee files a consent form.  *Hoffman v.*

---

[42]      *See* Ex. B (Training Workbook) at 11-17, 23-29, 32-36, 39-40.

*Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).  Time is of the essence because Financial

Advisors' claims are diminished or extinguished every day.  Timely notice will curtail their

continued erosion, *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 161 n.12 (N.D.N.Y. 2008),

and is necessary to effectuate the FLSA's "broad remedial purpose," *Braunstein*, 600 F.2d at

336.

### III.   The Legal Standard in the Second Circuit for Conditional Certification.

Courts in the Second Circuit employ a two-step approach when faced with a motion for

conditional certification.  *Myers,* 624 F.3d at 554-55.  At the initial notice stage, plaintiffs must

establish that other employees "may be similarly situated" to them.  *Id*. at 555 (internal quotation

marks omitted).  "Nothing more is needed at this stage of the litigation."  *Shajan*, 2010 WL

2218095, at *1.  In an FLSA exemption case, plaintiffs can meet their burden "by making some

showing that 'there are other employees . . . who are similarly situated with respect to their job

requirements and with regard to their pay provisions,' on which the criteria for many FLSA

exemptions are based, who are classified as exempt pursuant to a common policy or scheme."

*Myers,* 624 F.3d at 555 (quoting *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th

Cir. 2008)).

### IV.   Plaintiffs Exceed the Low Burden for Conditional Certification.

At this initial stage, Plaintiffs face a "low standard of proof" and need only make a

"modest factual showing" that they and others are similarly situated.  *Myers,* 624 F.3d at 555.

This is because "the purpose of the first stage is merely to determine *whether* 'similarly situated'

plaintiffs do in fact exist . . . ."  *Id.*  Accordingly, at this stage, "[w]eighing of the merits is

absolutely inappropriate."  *Shajan*, 2010 WL 2218095, at *1; *see Pippins v. KPMG LLP*, No. 11

Civ. 0377, 2012 WL 19379, at *6 (S.D.N.Y. Jan. 3, 2012) ("In ascertaining whether potential

opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying

10

claims.")  Only at the second stage, based upon a fuller record, can a court determine whether the

plaintiffs who have joined are *in fact* similarly situated.  *Myers*, 624 F.3d at 555.

At least two courts have conditionally certified collectives of registered financial services

salespeople based on similar showings.  In *In re RBC Dain Rauscher Overtime Litigation*, 703 F.

Supp. 2d 910 (D. Minn. 2010), the court granted conditional certification where the plaintiffs and

potential collective members had "similar duties and responsibilities and . . . ha[d] a similar

system of compensation."  *Id*. at 965.  In addition, the fact that the plaintiffs and collective

members were all required to be registered and were thus all subject to the same FINRA

guidelines weighed in favor of certification.  *Id*.  In *Bouder v. Prudential Financial, Inc*., No. 06

Civ. 4359, 2008 WL 7898281, at *4 (D.N.J. Mar. 27, 2008), the court granted conditional

certification of registered insurance salespeople based on evidence that their job duties were

similar to one another, that they were subject to the same compensation system, that their work

was governed by the same job description, and that they were recruited based on the same job

qualifications and provided with the same training.

Plaintiffs submit very similar evidence here.  They point to declarations from 13

individuals who worked as Financial Advisors in 10 different states – New York, New Jersey,

Texas, Florida, Ohio, Illinois, California, Indiana, Michigan, and Arizona – who testify that they

all performed the same primary job duty and the same day-to-day tasks, were subject to the same

compensation policies, and regularly worked overtime at Chase.  *See supra* pp. 3-8.  This

testimony is bolstered by Chase's uniform job descriptions, which do not vary from location to

location and show that Chase expected all Financial Advisors to perform the same duties and

required the same job prerequisites.[43]

Chase's common classification of all Financial Advisors as exempt and the uniformity of

---

[43]      *See* Ex. E (Job Postings).

Financial Advisors' job duties as reflected in witness declarations and Chase's uniform job descriptions satisfy Plaintiffs' light burden to show that they and potential members of the collective are similarly situated.  *See Pippins*, 2012 WL 19379, at *9-10 (granting conditional certification of nationwide collective where defendant's job description for the position at issue was identical across offices); *Cruz v. Hook-Superx, LLC*, 09 Civ. 7717, 2010 WL 3069558, at *2 (S.D.N.Y. Aug. 5, 2010)  (granting conditional certification of nationwide collective on the basis of 9 witness declarations from various store locations around the country); *Lynch*, 491 F. Supp. 2d at 369 (conditional certification granted because, among other reasons, all plaintiffs were subject to same job descriptions).[44]

## A.    Plaintiffs and Financial Advisors Are Similarly Situated With Respect to Their Job Duties.

Chase's own Financial Advisor job description demonstrates its view that all Financial Advisors perform essentially the same duties no matter where they are located around the country.[45]  The Plaintiffs, Opt-Ins, and other Chase Financial Advisors also testify to performing the same duties.[46]  Their duties did not vary even though they worked in several different states and Chase branches around the country.[47]

---

[44]      *See also Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008) (granting conditional certification based upon a single affidavit and deposition testimony that job duties were similar at all stores); *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditionally certifying collective action on basis of three affidavits and complaint's allegations); *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (conditionally certifying collective action on the basis of affidavits from three opt-in plaintiffs).

[45]      *See* Ex. E (Job Postings).

[46]      *See* Ex. G (Lloyd Decl.) ¶¶ 5, 7; Ex. H (Kaufmann Decl.) ¶¶ 6, 8; Ex. I (Hyman Decl.) ¶¶ 5, 7; Ex. J (Krichman Decl.) ¶¶ 5, 7; Ex. K (Johnson Decl.) ¶¶ 7, 9; Ex. L (Piccoli Decl.) ¶¶ 5, 7; Ex. M (Strouse Decl.) ¶¶ 5, 7; Ex. N (Zaat-Hetelle Decl.) ¶¶ 6, 8; Ex. O (VanHoogstraat Decl.) ¶¶ 6, 8; Ex. P (Do Carmo Decl.) ¶¶ 5, 7; Ex. Q (Spencer Decl.) ¶¶ 5, 7; Ex. R (Fuentes Decl.) ¶¶ 5, 7;  Ex. S (Ciullo Decl.) ¶¶ 5, 7.

[47]      Ex. G (Lloyd Decl.) ¶ 27; Ex. H (Kaufmann Decl.) ¶ 29; Ex. I (Hyman Decl.) ¶ 26; Ex. J (Krichman Decl.) ¶ 28; Ex. K (Johnson Decl.) ¶ 29; Ex. L (Piccoli Decl.) ¶ 26; Ex. M (Strouse Decl.) ¶ 26; Ex. N (Zaat-Hetelle Decl.) ¶ 28; Ex. O (VanHoogstraat Decl.) ¶ 28; Ex. P (Do

Courts routinely grant conditional certification where plaintiffs present similar job descriptions and other evidence of common job duties, including "supporting statements from potential plaintiffs working outside of the named plaintiff's geographic area." *Ahmed v. T.J. Maxx Corp.*, No. 10 Civ. 3609, 2012 WL 5507329, at *4 (E.D.N.Y. Nov. 14, 2012); *see also Pippins*, 2012 WL 19379, at *9 (granting conditional certification based on pleadings, affidavits, and other evidence which sufficiently established that plaintiffs and potential opt-ins were similarly situated with respect to job duties and requirements); *Cruz*, 2010 WL 3069558, at *2 (granting conditional certification based on declarations submitted by plaintiffs demonstrating uniformity of job duties). Here, Plaintiffs present Chase's own uniform job descriptions and declarations from Financial Advisors who worked in 10 different states and over 20 different branches around the country. This evidence is sufficient to meet their minimal burden to show that they and other Financial Advisors are similarly situated.

**B.    Plaintiffs and Financial Advisors Are Similarly Situated With Respect to Their FLSA Claims.**

This lawsuit challenges a straightforward, uniform Chase policy – its classification of all Financial Advisors as exempt from the FLSA's overtime requirements and the failure to pay them overtime as required under 29 U.S.C. § 207(a)(1). This is precisely the type of claim that the Second Circuit has recognized as being appropriate for conditional certification. *See Myers*, 624 F.3d at 555 ("In a FLSA exemption case, plaintiffs [can meet their burden] by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme.") (quoting *Morgan*, 551 F.3d at 1259).

---

Carmo Decl.) ¶ 26; Ex. Q (Spencer Decl.) ¶ 26; Ex. R (Fuentes Decl.) ¶ 26; Ex. S (Ciullo Decl.) ¶ 27.

Courts have held that a "blanket" classification policy, like Chase's policy, without much more, can meet the low threshold for conditional certification.  *See Pippins*, 2012 WL 19379, at *10 (plaintiffs were similarly situated where declarations and allegations showed that defendants' "policies and practices relative to the misclassification of Audit Associates do not vary, and instead affect all Audit Associates the same nationwide"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (a "blanket determination is evidence that differences in the position, to the extent that there are any, are not material to the determination of whether the job is exempt from overtime requirements").

Chase's professional, administrative, executive, outside-sales, and highly-paid exemption defenses raise common issues appropriate for collective resolution.  Although an evaluation of the merits is not appropriate at this early stage, *Shajan*, 2010 WL 2218095, at *1, the application of these exemptions turns on common issues that are not individual to each employee.  For example, the professional exemption generally does not apply to jobs, like that of Financial Advisor, that require only a high school diploma, and applies only to jobs that require a "prolonged course of intellectual instruction."  *See* 29 C.F.R. § 541.301.  Thus, whether the exemption applies depends on the prerequisites of the Financial Advisor job, which Chase spells out in uniform job descriptions.  Thus, this question is perfectly suited to collective adjudication. *See Pippins*, 2012 WL 19379, at *8.

Similarly, the administrative exemption hinges on whether Financial Advisors' primary duty directly relates to selling the products that Chase offers to the public, which is not exempt, or to servicing Chase's or its customers' management or general business operations, which is exempt.  The answer to this question will generate the same answer for all Financial Advisors. *See Davis v. JP Morgan Chase & Co.*, 587 F.3d 529, 531-32 (2d Cir. 2009) ("Employment may .

14

. . be classified as belonging in the administrative category, which falls squarely within the administrative exception, or as production/sales work, which does not."); *Kadden v. VisuaLex*, No. 11 Civ. 4892, 2012 WL 4354781, at *10 (S.D.N.Y. Sept. 24, 2012) (employee who provides "the very product or service that [the employer] offers to the public" is not administratively exempt). *See also* U.S. Dep't of Labor, Administrator's Interpretation No. 2010-1, http://www.dol.gov/WHD/opinion/adminIntrprtn/FLSA/2010/FLSAAI2010_1.htm (Mar. 24, 2010).

Whether the executive exemption applies will depend on whether Financial Advisors' primary duty is management. *See* 29 C.F.R. § 541.100(a)(2). Plaintiffs have met their low burden to show that they are similarly situated with respect to this question because their own declarations and those of 10 others state that they did not supervise other Chase employees and Chase's own job description does not include management as a job responsibility for Financial Advisors.[48]

Although Chase has asserted the outside sales exemption, it cannot really claim that the exemption applies because that would require it to admit that Financial Advisors' primary duty is sales, which would preclude the administrative exemption. *See* 29 C.F.R. § 541.203(b) ("[A]n employee whose primary duty is selling financial products does not qualify for the administrative exemption . . . ."). Even if Chase does maintain its outside sales affirmative defense, its application can be assessed on a collective-wide basis because Financial Advisors performed similar job duties and were all assigned to work inside Chase branches.[49] *See* 29 C.F.R. §

---

[48]    *See* E (Job Postings); Ex. G (Lloyd Decl.) ¶ 21; Ex. H (Kaufmann Decl.) ¶ 22; Ex. I (Hyman Decl.) ¶ 20; Ex. J (Krichman Decl.) ¶ 21; Ex. K (Johnson Decl.) ¶ 22; Ex. L (Piccoli Decl.) ¶ 19; Ex. M (Strouse Decl.) ¶ 19; Ex. N (Zaat-Hetelle Decl.) ¶ 21; Ex. O (VanHoogstraat Decl.) ¶ 21; Ex. P (Do Carmo Decl.) ¶ 19; Ex. Q (Spencer Decl.) ¶ 19; Ex. R (Fuentes Decl.) ¶ 19; Ex. S (Ciullo Decl.) ¶ 21.
[49]    Ex. E (Job Postings) (stating that Financial Advisors' duties occur "within our branch

541.500(a) (outside sales exemption applies to employees who perform sales "customarily and regularly . . . away from the employer's place or places of business").[50]

### C.     The Court Can Grant Conditional Certification Even If Chase's Exemption Defenses Require Factual Analysis.

Chase may claim that its exemption defenses preclude a collective action because they require "fact-intensive inquiries" of the tasks that Financial Advisors performed. "This argument ignores the purposes of the FLSA." *Indergit v. Rite Aid Corp.*, Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 2465488, at *9 (S.D.N.Y. June 16, 2010). "Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan*, 551 F.3d at 1263. "[S]ection 216(b) clearly applies to misclassification claims as well as other FLSA claims. Had Congress intended to exclude misclassification claims from collective actions, it would have done so." *Perkins v. S. New Eng. Tel. Co.,* 669 F. Supp. 2d 212, 218 (D. Conn. 2009).

Accordingly, courts in this District have soundly rejected the argument that the fact-intensive nature of exemption defenses precludes conditional certification. *Cohen v. Lehrman Grp.*, 686 F. Supp. 2d 317, 329-30 (S.D.N.Y. 2010). Moreover, courts in this District routinely grant conditional certification in misclassification cases, despite the fact-intensive nature of the cases. *See, e.g., Pippins*, 2012 WL 19379, at *1 (conditionally certifying nationwide collective

---

environment"); Ex. G (Lloyd Decl.) ¶ 4; Ex. H (Kaufmann Decl.) ¶ 4; Ex. I (Hyman Decl.) ¶ 4; Ex. J (Krichman Decl.) ¶ 3; Ex. K (Johnson Decl.) ¶; Ex. L (Piccoli Decl.) ¶ 4; Ex. N (Zaat-Hetelle Decl.) ¶ 3; Ex. O (VanHoogstraat Decl.) ¶ 3; Ex. P (Do Carmo Decl.) ¶ 3; Ex. Q (Spencer Decl.) ¶ 3; Ex. R (Fuentes Decl.) ¶ 3; Ex. S (Ciullo Decl.) ¶ 4.

[50]     Chase also asserts that the highly-paid exemption, which applies to employees who are paid at least $100,000, applies to Financial Advisors. *See* 29 C.F.R. § 541.601. Plaintiffs and opt-ins are also similarly situated with respect to this exemption because none of them came close to meeting the $100,000 minimum threshold. *See* Ex. G (Lloyd Decl.) ¶ 18; Ex. H (Kaufmann Decl.) ¶ 19; Ex. I (Hyman Decl.) ¶ 17; Ex. J (Krichman Decl.) ¶ 18; Ex. K (Johnson Decl.) ¶ 20; Ex. L (Piccoli Decl.) ¶ 18; Ex. M (Strouse Decl.) ¶ 18; Ex. N (Zaat-Hetelle Decl.) ¶ 18; Ex. O (VanHoogstraat Decl.) ¶ 20; Ex. P (Do Carmo Decl.) ¶ 18; Ex. Q (Spencer Decl.) ¶ 18; Ex. R (Fuentes Decl.) ¶ 18; Ex. S (Ciullo Decl.) ¶ 18.

of allegedly misclassified auditors); *Cruz*, 2010 WL 3069558, at *2 (conditionally certifying

nationwide collective of CVS assistant store managers).[51]  As in these cases, Chase's exemption

defenses are no obstacle to granting conditional certification.

## V.      The Court Can Grant Conditional Certification Despite Claims of Varying Job Duties.

Chase will likely claim that Financial Advisors' job duties varied from state to state or

branch to branch.  It may ask its captive current employees to submit declarations on its behalf

and present other information to which Plaintiffs have not had access and/or an opportunity to

challenge.  This evidence should not defeat conditional certification for three reasons.

First, it is premature at this early stage.  At this point, Plaintiffs seek a preliminary

determination.  For notice to issue, Plaintiffs only need to make a "modest factual showing" that

they and the potential opt-ins were subject to a common policy that violated the FLSA.  *Myers*,

624 F.3d at 555 (internal citations omitted).  Any evidence that Chase submits can "[a]t most . . .

raise questions as to whether [P]laintiffs could prevail under a more stringent standard and

whether the opt-in plaintiffs will survive a decertification motion at the close of discovery."

*Damassia*, 2006 WL 2853971, at *5.  Such arguments are "inappropriate" at the initial

conditional certification stage.  *Id.* at *4; *Shajan*, 2010 WL 2218095, at *1; *see also Pippins*,

2012 WL 19379, at *5 (variances in plaintiffs' and opt-ins' job duties are more appropriately

analyzed during the decertification stage); *Myers*, 624 F.3d at 555 (the purpose of the first stage

---

[51]      *Indergit*, 2010 WL 2465488, at *10 (granting conditional certification of class of misclassified drug store managers and assistant managers); *Cohen*, 686 F. Supp. 2d at 317 (conditionally certifying class of misclassified research associates); *Francis*, 2008 WL 4619858, at *3 (granting conditional certification of class of misclassified retail store assistant managers); *Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295, 2007 WL 2873929, at *6 (S.D.N.Y. Oct. 2, 2007) (conditionally certifying class of misclassified assistant drug store managers); *Damassia*, 2006 WL 2853971, at *8 (same); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003) (granting conditional certification of misclassified supermarket workers); *Jacobsen v. Stop & Shop Supermarket Co.*, No. 02 Civ. 5915, 2003 WL 21136308, at *4 (S.D.N.Y. May 15, 2003) (conditionally certifying collective of misclassified supermarket managers).

is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist" and not "whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs") (emphasis in original).

The proper focus now is on Plaintiffs' submissions and whether they meet the low burden required for notice to issue. At the second stage, after Plaintiffs have had the opportunity to depose Chase's affiants and challenge Chase's other evidence, Chase will have "ample opportunity" to demonstrate that Plaintiffs' case should not proceed as a collective action. *Damassia*, 2006 WL 2853971, at *7; *see Pippins*, 2012 WL 19379, at *12 (declining to consider defendant's affidavits and deposition testimony because they raised "misplaced merits arguments," which would require the Court to determine facts and credibility of affiants and resolve legal contentions, "all of which the conditional certification and potential later decertification process is structured so as to avoid"); *Cruz*, 2010 WL 3069558, at *2 ("A fact-intensive inquiry is inappropriate at the notice stage.").[52]

Second, the standard defense argument – that no two workers are alike and the Court must undertake an individualized, person-by-person analysis to resolve the case – is undermined here by the fact that Chase uses the same Financial Advisor job description throughout the country,[53] that Chase uniformly classified all Financial Advisors as exempt regardless of any purported variations, and that the exemptions at issue hinge on common proof. *See* Section IV.B. *supra*. As a result, all Financial Advisors' claims "are based on the same course of events and legal theory," namely that Chase's "decision to classify its [Financial Advisors] as 'exempt'

---

[52]     *See also Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 180 (D. Conn. 2010) (declining to review declarations submitted by defendant seeking to rebut plaintiff's showing at conditional certification stage). At a later point, the Court can weigh Chase's evidence against Plaintiffs' evidence and decide whether to decertify the collective. *See Myers*, 624 F.3d at 555; *see also Pendlebury v. Starbucks Coffee Co.*, No. 04 Civ. 80521, 2005 WL 84500 at *3 (S.D. Fla. Jan. 3, 2005) (Starbucks' assaertions "raise[d] factual matters not appropriate for consideration at this notice stage of litigation").

[53]     Ex. E (Job Postings).

is inconsistent with the requirements of the [FLSA]." *Damassia*, 250 F.R.D. at 158.   Chase's

decision to classify Financial Advisors as exempt "constitutes a common scheme or plan that

renders all [Financial Advisors] similarly situated for FLSA purposes." *Holbrook v. Smith &*

*Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007); *see Myers*, 624 F.3d at 555.

     Third, conditional certification does not require proof that Plaintiffs and prospective

collective members are *identically* situated – just *similarly* situated.  *See Pippins*, 2012 WL

19379, at *5 (plaintiffs need not show that "individual plaintiffs job duties are perfectly identical;

rather, plaintiffs need only show that they are similar"); *Indergit*, 2010 WL 2465488, at *8

("[Plaintiff] is not required to demonstrate at this early stage that his duties were identical to

those of all other store managers.  Instead, he must show that he was similarly situated to other

store managers with respect to the claimed violation of the FLSA").  In this case, Plaintiffs have

amply shown that they are similarly situated to other Chase Financial Advisors.

## VI.    <u>The Court Should Approve Plaintiffs' Proposed Notice.</u>

     Plaintiffs request that the Court authorize them to send the Proposed Notice, attached to

the Bien Decl. as Exhibit F, to all individuals who have worked as Financial Advisors and/or

Financial Advisor Associates, at any time between January 1, 2009 and the present ("Collective

Members").  The Proposed Notice is "timely, accurate, and informative," and therefore should be

approved. *Hoffmann-La Roche*, 493 U.S. at 172.

## <u>CONCLUSION</u>

     For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally

certify the proposed collective; (2) order Chase to produce a computer-readable data file

containing all the names, last known mailing addresses, last known telephone numbers, last

known email addresses, Social Security numbers, and work locations for all Collective Members;

and (3) authorize the issuance of the Proposed Notice to all Collective Members and a reminder

notice during the opt-in period.

Dated:        January 14, 2013
              New York, New York

Respectfully submitted,

**OUTTEN & GOLDEN LLP**
By:

/s/ Rachel Bien
Rachel Bien

**OUTTEN & GOLDEN LLP**
Adam T. Klein
Rachel Bien
Deirdre Aaron
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

*Attorneys for Lloyd Plaintiffs*

**LOVELL STEWART HALEBIAN
JACOBSON LLP**
By:

/s/ John Halebian
John Halebian
Adam C. Mayes

**LOVELL STEWART HALEBIAN
JACOBSON LLP**
317 Madison Avenue, 21st Floor
New York, New York 10017
Telephone: (212) 500-5010

*Attorneys for Plaintiff Ciullo*