

Advocates for Workplace Fairness

October 1, 2013

**By CM/ECF**
The Honorable Laura Taylor Swain
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     _Lloyd v. J.P. Morgan Chase & Co._, No. 11 Civ. 09305 (LTS)(HBP)
        _Ciullo v. JP Morgan Chase & Co._, No. 12 Civ. 02197 (LTS)(HBP)

Dear Judge Swain,

We represent the _Lloyd_ Plaintiffs in the above-referenced matters.  We write jointly with counsel for Plaintiff Ciullo and Defendants to provide the Court with the parties' respective proposed Notices, Ex. A (Plaintiffs' notice), Ex. B (Defendants' notice), Ex. C (a redline between Plaintiffs' and Defendants' proposed notices with Defendants' proposed edits in redline), and Plaintiffs' proposed Consent to Join form, Ex. D, to be mailed to potential collective members pursuant to § 216(b) of the Fair Labor Standards Act ("FLSA") and the Court's September 9, 2013 order ("Order"), ECF No. 116, and to request the Court's assistance to resolve several issues related to the Notice on which the parties have reached an impasse.

I.      **Whether the Notice Should Be Sent to Individuals Whom Defendants Claim Are Subject to the Binding Arbitration Agreement**

_Plaintiffs' Position_

The notice should be sent to all individuals who fall within the collective that the Court conditionally certified because collective members' claims will diminish each day that they do not file a claim, whether in Court or in an arbitral forum if the Court ultimately rules that their claims should be filed there.  The Court did not limit the collective to those who did not sign arbitration agreements when it granted Plaintiffs' motion, _see_ Order at 9-10, as Defendants requested.

Hon. Laura Taylor Swain
October 1, 2013
Page **2** of **14**

Moreover, to limit the collective at this point would be premature and would prejudice collective members. Those individuals who signed arbitration agreements should still have the opportunity to protect their claims from expiring. Furthermore, at this point, we do not know whether anyone who signed an arbitration agreement will actually opt-in or whether Defendants will move to compel them to arbitrate. The applicability of an arbitration agreement is the defendant's burden to prove, requires factual development, and cannot be determined before collective members join the case. For these reasons, courts have rejected defendants' requests to exclude individuals who signed arbitration agreements from the list of individuals who receive notice. *See Hernandez v. Immortal Rise, Inc.*, No. 11 Civ. 4360, 2012 WL 6720734, at *2 (E.D.N.Y. Dec. 27, 2012) (rejecting defendant's argument that the FLSA collective should be limited to members who had not signed arbitration agreements because the issue was one "of fact that should be determined during discovery rather than at th[e] preliminary stage"); *D'Antuono v. C & G of Groton, Inc.*, No. 11 Civ. 33, 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011) ("the existence of other [plaintiffs'] arbitration agreements is . . . immaterial to the question of [conditional] certification" because "the existence of arbitration agreements . . . raises a merits-based determination"). Even if the Court ultimately concludes that certain collective members must arbitrate their claims, notice is still necessary because otherwise their claims may expire before they ever have the chance to arbitrate them.

Defendants' arguments also appear to be aimed at preventing individuals from learning about their rights and asserting claims in any forum, whether it be in a court or in arbitration. The Court's order granting Defendants' Motion to Compel arbitration with respect to Plaintiffs Johnson, Patey, Picolli, VanHoogstraat, and Zaat-Hetelle was a decision as to those Plaintiffs only, and the Defendants cannot seek to have that order enforced against individuals who have not yet consented to join this litigation. This makes sense because "[t]he FAA provision requiring a court to compel arbitration contemplates that the parties to the agreement *are before the court*." *Whittington v. Taco Bell of Am., Inc.*, No. 10 Civ. 01884, 2011 WL 1772401, at *5 (D. Colo. May 10, 2011) (emphasis added). By arguing that individuals who signed arbitration agreements should not receive notice in the first place, Defendants seek to avoid their burden to prove that those individuals are subject to a valid arbitration agreement. Defendants should have to come forward with evidence that individuals who opt in to the case signed arbitration agreements, including by producing a copy of the signed arbitration agreement itself, before those individuals can be required to submit their claims to arbitration.

### *Defendants' Position*

This Court recently granted Defendants' Motion to Compel Arbitration with respect to Plaintiffs subject to the Binding Arbitration Agreement ("BAA"). *See* September 10, 2013 Order (ECF 116), at 10-12. Relying on recent Second Circuit and Supreme Court authority, this Court held that the BAA is an enforceable contract to arbitrate and that those subject to its terms are required to pursue their claims through individual arbitration. September 10, 2013 Order (ECF 116) at 11-12 (citing *Sutherland v. Ernst & Young LLP*, No. 12-304-cv, 2013 WL 4033844, at *4-5 (2d Cir., Aug. 9, 2013) and *Am. Express Co., v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310-12 (2013) ("*Amex*")). In so ruling, the Court rejected each of the arguments made by Plaintiffs: (1) that the right to proceed collectively under the FLSA cannot be waived;

Hon. Laura Taylor Swain
October 1, 2013
Page **3** of 14

(2) that Plaintiffs will not be able to vindicate their statutory rights in individual arbitration; and (3) that a waiver of the right to proceed collectively under the FLSA is a violation of the National Labor Relations Act ("NLRA").  *Id.* at 10-12 ("Accordingly, the Court finds that the BAA is enforceable . . . .").  Several other decisions by federal courts have enforced the BAA, including the class and collective action waiver.  *See Ryan v. JPMorgan Chase & Co.*, 2013 U.S. Dist. LEXIS 24628, at \*15-16 (S.D.N.Y. Feb. 21, 2013); *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 U.S. Dist. LEXIS 16865 (C.D. Cal. Feb. 5, 2013); *Newhall v. Chase Home Fin. LLC*, 2010 U.S. Dist. LEXIS 144750 (M.D. Fla. Dec. 22, 2010).

Initially, the Court also granted Plaintiffs' motion for conditional certification.  *See* September 10, 2013 Order (ECF 116), at 9-10.  The Court's Order, however, does not address whether others subject to the BAA can be sent a notice and Consent to Join this case.  *Id.*  There are over 2,000 individuals who worked as FAs or FAAs within the past three years who are subject to the BAA. (Emmert Decl. ¶¶ 4, 6, 7 & Exhs. 2-5 (ECF 76-10)); Isner Decl. ¶ 3 (ECF 76-26).  Each of them has already "expressly waive[d] any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court."  (Emmert Decl. ¶¶ 4, 6, 7 & Exhs. 2-5 (ECF 76-10)).  The Court has already found that the claims in this case are covered by the BAA and that the BAA (including the class and collective action waiver) is enforceable.  As such, it would be a breach of the BAA for any individual subject to the BAA to file a claim in this Court.

A.      **The Court Lacks Jurisdiction To Authorize The Sending Of Notice And Consents To File Claims To Individuals Subject To The BAA.**

Initially, the Court lacks jurisdiction with respect to claims subject to an arbitration agreement.  *See, e.g., Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 445 (S.D.N.Y. 2004) (Robinson, J.) (finding court lacked jurisdiction under Rule 12(b)(1) where all claims were subject to resolution through arbitration); *Goldberg v. Sovereign Bancorp, Inc.*, 10 –CV-6263, Dkt. No. 17 (S.D.N.Y. Aug. 19, 2011) (Batts, J.) (same); *see also Wright v. Early Warning Sys. Inc.*, CA 10-988-GMS, 2012 WL 579310 (D. Del. Feb. 22, 2012) ("If a valid and enforceable agreement to arbitrate governs the dispute, the court lacks jurisdiction.") (citing *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 179 (3d Cir. 1999)); *Gonzalez v. Citigroup*, CIV.09-017-SLR, 2009 WL 2340678 (D. Del. July 30, 2009) (same); *Farrell v. Convergent Commc'ns, Inc.*, C98-2613 MJJ, 1998 WL 774626 (N.D. Cal. Oct. 29, 1998) (same); *Tchienkou v. Cintas Corp.*, 1:05CV727, 2006 WL 1071842 (S.D. Ohio Apr. 20, 2006) (same).

"If a court lacks jurisdiction over an action, it lacks the power to act with respect to that action."  *United States v. Rudick*, 412 F.2d 16, 20 (2d Cir. 1969).  The Federal Arbitration Act ("FAA") carves out limited jurisdiction for the Court under which "[a] party aggrieved by the alleged failure, neglect, or refusal to arbitrate" may seek "an order directing that such arbitration proceed in the manner provided for in such [arbitration] agreement" in the "district court which, *save for such agreement, would have jurisdiction* under title 28 . . . ."  9 U.S.C. § 4 (emphasis added); *see also* 9 U.S.C. § 9 (granting limited jurisdiction to confirm, vacate, modify, or correct an arbitration award); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no room for the exercise of discretion by a district

Hon. Laura Taylor Swain
October 1, 2013
Page **4** of **14**

court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960) ("[T]he court's function in confirming or vacating an arbitration award is severely limited.  If it were otherwise, the ostensible purpose for resort to arbitration, i.e., avoidance of litigation, would be frustrated.").

Sending notice and inviting claims to be filed in court by individuals who are subject to an arbitration agreement the Court has already enforced is far outside the limited jurisdiction granted to this Court under the FAA.  The FAA provides a remedy for "[a] party aggrieved" by another's failure to arbitrate, 9 U.S.C. § 4, but it is the opposite of what this Court is permitted to do under the FAA for the Court to *cause* a party to be so aggrieved by inducing the mass breach of arbitration agreements by inviting individuals who have not filed claims in any forum to file claims in court.

Moreover, the Court's authority to authorize the sending of notice and consents to join is limited to case management for the "efficient resolution *in one proceeding* of common issues of law and fact."  *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989) (emphasis added).  Nothing under *Hoffman-LaRoche* confers jurisdiction to this Court that is lacking under the FAA, or gives the Court the power to send general notice of "FLSA rights" to invite the filing of over 2,000 claims that would need to be litigated *individually* in a different forum.  Doing so would be completely divorced from the Court's authority to manage *this case*, and would be contrary to the limited jurisdiction conferred by the FAA and concepts of judicial efficiency and fundamental fairness.

B.     **A Court Order Requiring The Sending Of Notice And Inviting Individuals Subject To An Enforceable Arbitration Agreement To Join This Litigation Would Violate The FAA.**

Defendants also respectfully submit that notice cannot be sent to individuals subject to the BAA because they have contractually agreed not to file a claim in this case, and the Court is required under the FAA to enforce those agreements in accordance with their terms.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-49 (2011) (a "principal purpose" of the FAA is enforcement of arbitration agreements "according to their terms").  To invite over 2,000 individuals to file claims in this case in breach of their arbitration agreements would trample on the policy under the FAA.

Significantly, Plaintiffs' professed interest in stirring up as many claims as possible is contrary to the policy of the FAA.  In *Amex*, the Supreme Court ruled that the FAA "favor[s] the absence of litigation when that is the consequence of a class-action waiver, since its 'principal purpose' is the enforcement of arbitration agreements in accordance with its terms."  *Amex*, 133 S. Ct. at 2312 n.5 (quoting *Concepcion*, 131 S. Ct. at 1748).  Defendants would be irreparably harmed should notice be sent to over 2,000 individuals inviting them to file claims in breach of the BAA and contrary to the commands of the FAA.  *See Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1994) ("[W]here an order grants a stay of arbitration, one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes.  **If that party must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration – speed and economy – are lost forever.**  We find this

Hon. Laura Taylor Swain
October 1, 2013
Page **5** of **14**

consequence serious, perhaps, irreparable."); *Reliance Nat'l Ins. Co. v. MIC Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 388, 391 (S.D.N.Y. 1997) ("Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts.  Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate."); *Paramedics Electromedicina Comercial LTDA v. GE Medical Sys. Info. Tech., Inc.*, No. 02 Civ. 9369, 2003 U.S. Dist. LEXIS 26928, at *37 (S.D.N.Y. June 4, 1993) ("The deprivation of [a party's] contractual right to arbitrate its claims . . . constitutes irreparable harm."); *see also Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 448-49 (S.D.N.Y. 2010) (a party is irreparably injured by being forced to proceed on an undesirable basis, *i.e.*, on a class-wide versus individual basis) (citing *Stolt-Nielsen, S.A. v. AnimalFeeds, Int'l Corp.*, 130 S. Ct. 1758, 1775 (2010) (proceeding on a class basis significantly changes the nature of proceedings as the "changes brought about by the shift from bilateral arbitration to class-action arbitration" are "fundamental")).

Moreover, should the Court allow its compulsory power to be used by Plaintiffs' counsel to stir up claims that would not otherwise be filed, and cannot be filed in this Court pursuant to an arbitration agreement this Court has already found to be valid, it would simply encourage other lawyers to file collective actions in court involving poplutions of individuals subject to arbitration agreements with class action waivers, and thereby rent this Court's power to solicit claims to then be filed in arbitration.  The result would be much more collective action litigation, and would defeat the bargained-for agreement that individuals cannot participate or file claims in collective actions or in court – a result that does violence to the "principal purpose" of the FAA.  *Amex*, 133 S. Ct. at 2312 n.5.

### C.    Plaintiffs' Arguments For Sending Notice To Individuals Subject To BAAs Are Without Merit.

Plaintiffs' argument that Defendants seek to "prevent[] individuals from learning about their rights and asserting claims in any forum" is misplaced.  Congress legislated the manner and means by which employees would receive notice of their FLSA rights – requiring employers to display postings in every workplace.  29 U.S.C. § 516.4.  There is no allegation that CISC did not post the required notice at its branches, and FAs have been notified of their FLSA rights in the manner prescribed by Congress.  Those with BAAs remain free to file individual claims in arbitration at any time.  Moreover, to the extent individuals decide not to file claims in the absence of a court-authorized invitation to do so, the FAA "favor[s] the absence of litigation when that is the consequence of a class-action waiver, since its 'principal purpose' is the enforcement of arbitration agreements in accordance with its terms."  *Amex*, 133 S. Ct. at 2312 n.5 (quoting *Concepcion*, 131 S. Ct. at 1748).

The two decisions cited by Plaintiffs for the proposition that notice can be sent to those who have arbitration agreements are distinguishable.[1]  In *Hernandez*, the court had not yet enforced the arbitration agreement at issue, unlike here.  *Hernandez*, 2012 WL 4369746, at *5.  Moreover, neither of the decisions referenced the FAA or addressed the court's jurisdiction to

---

[1]      *Hernandez v. Immortal Rise, Inc.*, 2012 WL 6720734 (E.D.N.Y. Dec. 27, 2012), *aff'g*, 2012 WL 4369746 (E.D.N.Y. 2012) (Bloom, M.J.); *D'Antuono v. C&G of Groton, Inc.*, 2011 WL 5878045 (D. Conn. Nov. 23, 2011).

Hon. Laura Taylor Swain
October 1, 2013
Page **6** of **14**

issue notice to individuals subject to an arbitration agreement, and both decisions involved a limited number of individuals at one work location rather than over 2,000 individuals at hundreds of locations nationwide.

Indeed, both decisions simply dismiss the arbitration issue as a "merits-based determination" for a later date. *Hernandez*, 2012 WL 6720734, at *5 (quoting *D'Antuono v. C&G of Groton, Inc.*, 2011 WL 5878045). Not only is the Court's enforcement of an arbitration agreement not a merits-based determination, but under the FAA the Court is precluded from making merits-based determinations for individuals subject to arbitration agreements. *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509 (2001) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement.").

Moreover, there is no "factual development" needed with respect to these agreements. There was no discovery conducted or requested with respect to the Motions to Compel Arbitration already decided by the Court. The Court has already found the BAA to be enforceable. And even if there were individual facts that needed to be decided by the Court, such individuals would not be similarly situated and it would not further judicial efficiency to invite 2,000 individuals to file claims only to have to adjudicate individual facts as to the enforceability of their arbitration agreements. *See Clausnitzer v. Fed. Ex. Corp.*, 248 F.R.D. 647, 655 (S.D. Fla. 2008) (denying class treatment because determining the validity of provisions of the purported plaintiffs' agreements was necessarily individualized); *see also Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 319 (S.D.N.Y. 2003) ("To the extent that the Releases could provide a defense as to recovery under the claims posed in this lawsuit, that defense requires a fact-specific inquiry into the circumstances of the execution of each individual's release" and "their existence presents an insurmountable barrier to class-wide adjudication of these claims"); *Delano v. MasTec, Inc.*, 2011 WL 2173864, *5 (M.D. Fla. June 2, 2011) (employee with arbitration agreement not similarly situated to plaintiffs without such agreements).

Plaintiffs' reliance on the decision in *Whittington v. Taco Bell of Am., Inc.*, 2011 WL 1772401, at *5 (D. Colo. May 10, 2011) is misplaced. There, the defendant filed a motion to compel arbitration as to the plaintiff and putative class members. The court denied the motion as to the plaintiff because defendant could not establish that the plaintiff signed an arbitration agreement. *Id.* at *5. The court then found that it lacked the power to compel individuals not before the court to arbitration. *Id.* Here, Defendants have already enforced the BAA against the Plaintiffs who are subject to the Agreement. Moreover, Defendants do not seek to compel arbitration of the class members claims. Defendants simply seek a ruling that Court's power to invite and join claims to be filed in this case does not extend to individuals who are subject to agreements not to file claims in this Court, which agreements this Court has already found to be enforceable. Defendants are not seeking to prevent people from knowing their rights, but rather to obtain the benefit of their bargain, for which they provided consideration, for the prompt and efficient resolution of claims by individuals who really have claims rather than those herded into the arms of plaintiffs' lawyers through court-authorized invitations to file claims.

The Court should follow its own decision enforcing the BAA, and the mandate of the FAA, and clarify that notice and a Consent to Join cannot be sent to those subject to the BAA.

Hon. Laura Taylor Swain
October 1, 2013
Page **7** of **14**


II.     **Notice Heading**

*Plaintiffs' Position*

Plaintiffs believe that the notice should state that it is a "Court-Authorized" notice at the top and inform collective members of the Court that authorized it.  *See* Ex. A.  The Federal Judicial Center's model notice includes this information, *see* www.fjc.gov, and the language will ensure that collective members do not mistake the notice for an attorney solicitation and disregard it.

*Defendants' Position*

Plaintiffs' notice improperly gives the impression that the Court is issuing the notice, and that the Court has already approved of the merits of the case.

Plaintiffs' proposed notice starts by declaring and bold and large font that it is "COURT-AUTHORIZED" and puts the title of the Court at the top of the notice.  This will make it appear that the notice is coming from the Court, which is improper.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action"); *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 851 (N.D. Ill. 2008) (finding that proposed notice containing name of court at top of first page was inappropriate as it "could suggest to potential plaintiffs that the Court has lent its imprimatur to the merits of this case").

III.    **How Defendants Should Be Identified**

The parties disagree as to how Defendants should be identified in the notice.  Plaintiffs initially proposed referring collectively to Defendants J.P. Morgan Chase & Co. and Chase Investment Services Co. as "Chase."  Defendants instead suggested referring to both collectively as "CISC," to which Plaintiffs responded with a proposal that they be referred to collectively as "Defendants."

*Plaintiffs' Position*

Plaintiffs believe that both Defendants – J.P. Morgan Chase & Co. and Chase Investment Services Co. ("CISC") – should be identified in the notice because Plaintiffs allege that both entities jointly employed them and the Court has not ruled on Defendants' contention that CISC was the only employer.  Plaintiffs believe that referring to both Defendants as CISC will be confusing to potential collective members, particularly as potential collective members may not be familiar with the acronym CISC.  In addition, "Chase" is a more easily recognizable reference to Defendants.  As set forth in Ex. A, Plaintiffs propose that the notice refer to the entities collectively as "Chase" or "Defendants."

Hon. Laura Taylor Swain
October 1, 2013
Page **8** of **14**

    *Defendants' Position*

    Defendants' notice identifies both Defendants on page 1, but the FAs and FAAs, as registered financial advisors, are employed Chase Investment Services Co. (now J.P. Morgan Securities, LLC ("CISC"). Defendants simply wish to be accurate about the entities and their names. FAs and FAAs who have been employed by CISC will have no difficulty recognizing this reference.

## IV.    Length of the Opt-In Period

    *Plaintiffs' Position*

    Plaintiffs propose a 90-day notice period to afford sufficient time for re-mailings to collective members whose notices are returned undeliverable. Courts have routinely approved opt-in periods of 90 days or even longer. *See, e.g.*, *Pippins v. KMPG LLP*, No. 11 Civ. 377, 2012 WL 19379, at *13 (S.D.N.Y. Jan. 3, 2012) (approving 90-day notice period); *In re Milos Litig.*, No. 08 Civ. 6666, 2010 WL 199688, at *2 (ordering 90-day notice period); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 165 (N.D.N.Y. 2008) (approving nine-month notice period).

    *Defendants' Position*

    Defendants' notice allows for a 60 day, rather than a 90 day, notice period. Judges throughout this district have consistently recognized that a 60-day period is the most appropriate opt-in period. *Bah v. Shoe Mania, Inc.*, 08-CIV-9380-LTS-AJP, 2009 WL 1357223, at *11 (S.D.N.Y. May 13, 2009) (Swain, J.) (ordering a 60-day opt-in period). As the Court explained in *Whitehorn v. Wolfgang's Steakhouse, Inc.*, when ordering that the opt-in period should be 60 days rather than 90 days: "[w]hile some courts have granted up to 90 day opt-in periods, they generally do so where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Whitehorn*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011); *see also Harhash v. Infinity West Shoes, Inc.*, No. 10-Civ.-8285, 2011 U.S. Dist. LEXIS 96880, at *12 (S.D.N.Y. Aug. 24, 2011) (requiring revision of the notice to reduce the opt-in period from 80 days to 60); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 61 (E.D.N.Y. 2011) ("allowing for a sixty day notice period for potential plaintiffs to return their opt-in forms is appropriate and is common practice under the FLSA."); *Gordon v. Kaleida Health*, 2009 WL 3334784, at *6 (W.D.N.Y. Oct. 13, 2009) (limiting notice period to 60 days). There are no special circumstances here, and there is no reason why a recipient of this notice cannot make a decision about whether to participate and return the consent to join form within 60 days as Defendants propose.

## V.    Statement of Defendants' Position

    Defendants seek to include the following language set out in bold below:

    CISC maintains that its Financial Advisors are properly compensated as exempt employees **and do not need to record their hours and be paid by the hour.**

Hon. Laura Taylor Swain
October 1, 2013
Page **9** of **14**

> **The United States Department of Labor ("DOL"), which interprets and enforces the FLSA, has determined that employees performing the duties of financial advisors are exempt from overtime, and so has another federal court. The DOL's Opinion Letter can be viewed on its website at the following address: http://www.dol.gov/whd/opinion/FLSA/2006/2006_11_27_43_FLSA.pdf**

*Plaintiffs' Position*

Plaintiffs oppose the language in bold because it includes inaccurate information about the case and might mislead collective members into believing that there has already been a determination as to whether their claims have merit and dissuade them from joining. First, nothing in this case seeks to convert Financial Advisors into "hourly" workers, as Defendants language implies. Second, Defendants' legal argument regarding the Department of Labor and other courts is misleading because it suggests that the merits of the claims in this case have already been determined, which they have not. Moreover, such arguments are not appropriate for 216(b) notices, which are supposed to be neutral. Language that is "unduly argumentative, meant to discourage participation in the lawsuit, or [is] unnecessary or misleading" should be rejected. *See In re Milos Litig.*, 2010 WL 199688, at *2.

Courts in this Circuit have rejected such argumentative language. *See, e.g.*, *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) ("Nor may Defendants include a position statement beyond that included in Plaintiffs' proposed notice;" statement that employer "denies that they violated the Fair Labor Standards Act is sufficient") (internal quotation marks and citation omitted); *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10 Civ. 7557, 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011) (refusing to require language describing defendant's position where plaintiff's proposed notice already indicated that defendants denied wrongdoing); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (single sentence that defendant denied the violations was sufficient).

Plaintiffs do not object to including in the notice Defendants' other proposed language, including that Defendants "maintain[] that its Financial Advisors are properly compensated as exempt employees" and that "Defendants deny the Plaintiffs' allegations and contends that it has properly compensated all Financial Advisors."

*Defendants' Position*

Defendants should be allowed a brief statement of their own choosing as to their position in this case. Moreover, before FAs and FAAs make a decision to join the litigation, they should be permitted to see what the Department of Labor – the agency with authority to interpret and enforce the law – has said about the exempt status of Financial Advisors. Defendants have simply pointed FAs and FAAs to the DOL's website.

Hon. Laura Taylor Swain
October 1, 2013
Page **10** of **14**

## VI.    Whether the Notice Should Contain Contact Information for Defendants' Counsel

### *Plaintiffs' Position*

It is inappropriate for the notice to invite collective members to contact Defendants' counsel by including their contact information. Courts routinely reject defendants' requests to have their counsel's information included in the notice because defense counsel "do[] not play a role in managing the distribution of the notice or the gathering of consent forms," and including additional lawyers would only "create[] the potential for confusion of those who receive the notice." *Cryer v. Intersolutions, Inc.*, No. 06 Civ. 2032, 2007 WL 1053214, at *3 (D.D.C. Apr. 7, 2007); *see also Enriquez v. Cherry Hill Market Corp.*, No. 10 Civ. 5616, 2012 WL 440691, at *4 (E.D.N.Y. Feb. 10, 2012) ("The Court is not aware of any reason potential plaintiffs would need to communicate with the defendants' counsel, or vice versa."); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07 Civ. 5062, 2008 WL 2622929, at *4 (E.D.N.Y. Jun. 30, 2008) ("[T]hose deciding to opt in are likely to be represented by plaintiff's counsel, and in any event certainly will not be represented by counsel for the defendant."); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007) ("declin[ing] to require that the notice include the contact information of defendant's counsel"); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009) (defense counsel's information "is both unnecessary and inappropriate"); *Perry v. Nat'l City Mortg., Inc.*, No. 05 Civ. 891, 2007 WL 1810472, at *4 (S.D. Ill. June 21, 2007) ("It would not make sense for a potential putative class member to seek information from Defendant's counsel."); *Gambo v. Lucent Techs., Inc.*, No. 05 Civ. 3701, 2005 WL 3542485, at *7 (N.D. Ill. Dec. 22, 2005) (noting "there is no basis in law or logic for" defendant's counsel's contact information to be included in the notice).

### *Defendants' Position*

Defendants' notice provides readers with an avenue to reach out to defense counsel if they choose to do so, so long as they have not returned a Consent to Join form.  Providing contact information for Defendants' counsel is appropriate.  *See Bah v. Shoe Mania, Inc.*, 2009 WL 1357223, at *12 (S.D.N.Y. May 13, 2009) (Swain, J.) (holding that "the notice must also include the contact information of counsel for Defendants as one source from whom potential plaintiffs could obtain information"); *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 U.S. Dist. LEXIS 75817, at *24 (E.D.N.Y. Oct. 11, 2007) (finding that "it would be appropriate to notify potential class members that they can seek further information about the case, and to include the contact information of defense attorneys" to obtain such information).

## VII.    Information about Attorneys' Fees

Plaintiffs object to the inclusion of the following language in bold regarding Plaintiffs' counsel's fee arrangement in the notice:

The named Plaintiffs have entered into a contingency fee agreement with Plaintiffs' counsel, which means that if you join the lawsuit and Plaintiffs do not win, there will be no attorneys' fees or costs chargeable to you.  In the event there

Hon. Laura Taylor Swain
October 1, 2013
Page **11** of **14**

is a recovery, Plaintiffs' counsel will apply to the Court to receive the greater of:
(1) their "lodestar" amount, calculated by multiplying their reasonable hourly
rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross
settlement or judgment amount.  The fees may be part of a settlement obtained or
money judgment entered in favor of Plaintiffs, or may be ordered by the Court to
be separately paid by Chase, or may be a combination of the two.  **The hourly
rates for Plaintiffs' counsel range from ___ to ___**.  A copy of the contingency
fee agreement executed by the named Plaintiffs may be obtained upon request
from Plaintiffs' counsel identified above.

*Plaintiffs' Position*

Plaintiffs believe that information regarding the hourly rates of Plaintiffs' counsel is not
relevant to potential collective members, as they will not pay Plaintiffs' counsels fees out of
pocket.

*Defendants' Position*

Defendants initially objected to most of the language above, but Plaintiffs prevailed upon
Defendants that potential opt-ins should know what the fee agreement provides.  Plaintiffs'
language, however, informs individuals that the potential recovery that they could share in will
be reduced by a calculation involving their "reasonable hourly rates" but does not disclose those
rates so that the individuals can decide for themselves whether the hourly rates are "reasonable,"
as is being claimed in the notice.

**VIII.   Information about Collective Actions**

Plaintiffs propose including information in Paragraphs 3 and 4 of their proposed notice
explaining what a collective action is and why this case is proceeding as a collective action.  *See*
Ex. A (Pls.' notice) ¶¶ 3-4.

*Plaintiffs' Position*

The language that Plaintiffs propose is neutral and intended to explain how a collective
action operates to those potential collective members who might not be familiar with FLSA
collective action procedures.  Information about the procedure posture of the case is important
for individuals to know as they decide whether to join the lawsuit.

*Defendants' Position*

This language is unnecessary and potentially confusing.  In particular, Plaintiffs claim
that the Court has "found that the Plaintiffs who filed this lawsuit are 'similarly situated' to other
Financial Advisors who worked at Chase."  In fact, the Court found only that other FAs
"potentially" are similarly situated, a ruling that will be revisited again on Defendants' motion to
decertify.  *See* September 10, 2013 Order (ECF 116), at 8.

Hon. Laura Taylor Swain
October 1, 2013
Page **12** of **14**

## IX.    Information About a Potential Recovery and the Consequences of Joining the Lawsuit

### *Plaintiffs' Position*

Defendants object to the inclusion of language at various places in the notice informing potential collective members that: (1) one potential consequence of joining the case may be a recovery, and similarly, that if they decide not to join, they will not be entitled to a recovery in this case if one is awarded; and (2) their claims are subject to a statute of limitations and may expire unless they take action.  *See* Ex. A (on page 2, explaining  that if collective members do nothing, they will not be included in any judgment or settlement in the case, "which may include money or benefits;" in Paragraph 10, stating that if collective members do nothing, "You will not be entitled to share any amounts recovered by Plaintiffs as part of the lawsuit" and "Delay in joining this action, or proceeding separately, may result in some or all of your claims expiring as a matter of law"; and in Paragraph 11, stating that if potential collective members choose to join "You will also share in any proceeds from a settlement or judgment favorable to the Collective.")

Plaintiffs believe that their proposed language is neutral and is important information that collective members should know as they decide whether to join the case.  Such information is routinely included in 216(b) notices.  *See, e.g., Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385, 2010 WL 2218095, at *2 (S.D.N.Y. June 2, 2010) (declining to strike "the language about not participating in any recovery if the recipient does not file the consent form.")

### *Defendants' Position*

The notice proposed by Defendants already fully explains in three places the consequences of joining or not joining the case, including participating or not participating in a settlement.  *See* pp. 2, 4, 5.  Plaintiffs propose to *add* numerous additional references – listed above – to settlement and potential "money or benefits" that can be obtained.  Plaintiffs' notice at pp. 2, 4, 5.  Plaintiffs' notice is so repetitive on these points as to suggest that there has been or may be a settlement and money available.  There is no settlement in this case, however, and individuals who decide to participate will be bound by any judgment or settlement in the case, whether favorable or unfavorable.  Defendants' proposed notice accurately states this – including that individuals who join the case will be bound by any settlement – without being suggestive that a settlement is likely.  *See Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194(RMB)(DF), 2005 WL 3240472, at*6 (S.D.N.Y. Nov. 30, 2005) (upholding inclusion of disclaimer "[t]his notice does not mean that you have a valid claim or that you are entitled to any monetary recovery.  Any such determination must still be made by the Court").

## X.    Information About Litigation Costs

Plaintiffs object to the inclusion of Defendants' proposed language in Paragraph 9 of Defendants' proposed notice that a potential collective member who joints the lawsuit "may be asked to pay litigation costs."  Ex. B (Defs.' notice) ¶ 9.

Hon. Laura Taylor Swain
October 1, 2013
Page **13** of **14**

> ### *Plaintiffs' Position*

The notice should not state "You may be asked to pay litigation costs" because it is not an accurate reflection of the law and will very likely chill participation in the case. *See White v. 14051 Manchester, Inc.*, No. 12 Civ. 469, 2012 WL 5994263, at *7 (E.D. Mo. Nov. 30, 2012) modified in part, 2012 WL 6607835 (E.D. Mo. Dec. 18, 2012) ("including a warning about potential costs in the class notice could have a 'chilling effect' on potential plaintiffs participating in FLSA actions and . . . it is unclear whether prevailing defendants in FLSA actions are entitled to costs" and collecting cases discussing same) (internal quotation marks and citation omitted).

> ### *Defendants' Position*

Defendants' proposed statement on responsibility for litigation is accurate and individuals considering whether to join should have this information. *Bah v. Shoe Mania, Inc.*, 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009) (Swain, J.) (ordering plaintiffs' proposed form of notice altered in order to inform the potential plaintiffs that, "if they opt in, they *may* be asked to (1) appear for depositions; (2) respond to written discovery; (3) testify at trial and/or (4) ***pay litigation costs***") (emphasis added).

## XI.     Information About the Court's Order

Plaintiffs object to the inclusion of certain language on pages 1-2 of Defendants' notice describing the Court's Order.  The disputed language is set forth in bold:

> The lawsuit is proceeding as a collective action on behalf of Financial Advisors and Financial Advisor Associates (together "Financial Advisors") who worked for Defendants at any time from _____, 2010 through the present**, and who are not subject to CISC's Binding Arbitration Agreement.  The Court has only conditionally ruled that the case may proceed as a collective action and is subject to a later decision by the Court whether the named Plaintiffs and those who may join this lawsuit actually are "similarly situated" in accordance with applicable laws and that it is appropriate for this case to proceed as a collective action.**

> Ex. B (Defs.' Notice), at pp. 1-2.

> ### *Plaintiffs' Position*

Plaintiffs believe that Defendants' proposed language is not an accurate description of the Court's Order.  The Court's Order did not exclude those potential collective members who signed Binding Arbitration Agreements from receiving notice.  The Court's Order also stated that the evidence submitted by Plaintiffs was sufficient to demonstrate that there are other employees who are similarly situated.  Order, ECF No. 116, at p. 8.  The language should be modified to clarify that the decision may be subject to a later motion by Defendants to "decertify" the collective if they can show that collective members are not similarly situated.

Hon. Laura Taylor Swain
October 1, 2013
Page **14** of **14**

    *Defendants' Position*

    Whether the notice should be sent to individuals who are subject to BAAs is addressed above.  The Defendants' language about the procedural posture of the case and the Court's later decision relating to decertification and Plaintiffs' proposed modification is unnecessary.  This language is particularly important if the Court decides to include Plaintiffs' language above about "Information about Collective Actions," which says nothing about decertification.

    We thank the Court for its assistance with these matters.

            Respectfully submitted,


            s/ Rachel Bien
            Rachel Bien

enclosures
cc:    Sam Shaulson, Esq. (via email)
        Thomas A. Linthorst, Esq. (via email)
        Blair Robinson, Esq. (via email)
        John Halebian, Esq. (via email)
        Adam T. Klein, Esq.
        Deirdre Aaron, Esq.