UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

JEFFREY LLOYD, on behalf of          :

himself and those similarly
situated, et al.,                    :    11 Civ. 9305 (LTS)(HBP)

                    Plaintiffs,      :

     -against-                       :

J.P. MORGAN CHASE & CO., et al.,     :

                    Defendants.      :

-----------------------------------X

KENNETH CIULLO, individually         :
and on behalf of all others
similarly situated, et al.,          :    12 Civ. 2197 (LTS)(HBP)

                    Plaintiffs,      :    REPORT AND
                                          RECOMMENDATION
     -against-                       :

J.P. MORGAN CHASE & CO., et al.,     :

                    Defendants.      :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE LAURA TAYLOR SWAIN, United States

District Judge,

I.   Introduction

        By notice of motion dated December 30, 2013 (Docket
Item 150 in 11 Civ. 9305), defendants seek certification, pursu-
ant to 28 U.S.C. § 1292(b), to file an interlocutory appeal from
the Order of the Honorable Laura Taylor Swain, United States
District Judge, dated December 19, 2013 (Docket Item 143 in 11
Civ. 9305) which overruled objections to my Order dated October
29, 2013 (Docket Item 127 in 11 Civ. 9305).

        This is, in principal part, a collective action brought
under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et
seq.  The dispute that gives rise to this motion concerns who
should receive notice of the right to join this action.

        For the reasons set forth below, I respectfully recom-
mend that defendants' motion for 1292(b) certification be
denied.[1]

_____

        [1]Except in cases in which he or she has plenary jurisdiction
pursuant to 28 U.S.C. § 636(c), a Magistrate Judge can only
recommend whether 1292(b) certification should be granted.
Vitols v. Citizens Banking Co., 984 F.2d 168, 169-70 (6th Cir.
1993).

II.   Facts

   A.   Background[2]

      Plaintiffs in these putative class and collective
actions are Financial Advisors and Financial Advisor Associates
(collectively, "FAs") who presently or formerly worked selling
defendants' investment products.  Defendants classified plain-
tiffs as "exempt" employees under the FLSA and did not pay them
overtime compensation at the rate of one and one-half times their
regular rate.  Plaintiffs challenge this classification, assert-
ing claims on behalf of a nationwide collective under the FLSA
and on behalf of New York and New Jersey classes under New York
and New Jersey law, respectively.

      Defendants required that some of their FAs sign one of
two different forms of arbitration agreements.[3]  In her September
9, 2013 Memorandum Order, Judge Swain found that five of the
plaintiffs who were before her -- Robert Johnson, Jennifer Zaat-

_____

      [2]The facts set forth in the text are drawn from Judge
Swain's September 9, 2013 Memorandum Order granting plaintiffs'
motion for conditional certification and granting in part and
denying in part defendants' motion to compel arbitration.  Lloyd
v. J.P. Morgan Chase & Co., 11 Civ. 9305 (LTS), 12 Civ. 2197
(LTS), 2013 WL 4828588 (S.D.N.Y. Sept. 9, 2013).


      [3]There are approximately 500 FAs who did not sign any form
of arbitration agreement (Declaration of Rachel Bien, Esq., dated
Nov. 26, 2013 (Docket Item 140 in 11 Civ. 9305) ¶ 6).

Hetelle, Scott Vanhoogstraat, Peter Piccoli and Graeme Patey --
had signed what Judge Swain denominated as the Binding Arbitra-
tion Agreement ("BAA") while four other plaintiffs --  Lawrence
Kaufmann, Susan Hyman, Alan Krichman and Jeffrey Lammert -- had
signed a different form of arbitration agreement which Judge
Swain denominated as the "Agreement."  Lloyd v. J.P. Morgan Chase
& Co., supra, 2013 WL 4828588 at *2.

In her Order, Judge Swain went on to find that plain-
tiffs had made the "modest factual showing" required for condi-
tional certification pursuant to 28 U.S.C. § 216(b), i.e., that
the members of the putative collective were "similarly situated."
Lloyd v. J.P. Morgan Chase & Co., supra, 2013 WL 4828588 at *6.
Thus, Judge Swain authorized that notice be sent to  similarly
situated potential plaintiffs.

Judge Swain then turned to defendants' motion to compel
arbitration and found that the overtime claims of the five
individuals before her who had signed the BAA were required by
the BAA to arbitrate their claims.  Accordingly, she dismissed
the claims of these five plaintiffs and compelled them to submit
their claims to arbitration.  Lloyd v. J.P. Morgan Chase & Co.,
supra, 2013 WL 4828588 at *6.

With respect to the four plaintiffs before her who had
signed the Agreement, Judge Swain found that their overtime

4

claims were not subject to mandatory arbitration and denied the
motion to compel arbitration as to the claims of these plain-
tiffs.[4]  Lloyd v. J.P. Morgan Chase & Co., supra, 2013 WL 4828588
at *7.

        The parties were subsequently unable to agree on the
form of the notice to be sent, and the matter was referred to me
to resolve.  After receiving written submissions from counsel, I
held a hearing on October 28, 2013 at which plaintiffs took the
position that the opt-in notice should be sent to all members of
the collective, without regard to which arbitration agreement
they signed.  Although defendants conceded at the conference that
Judge Swain's September 9, 2013 Order was binding only on those
individuals who were parties as of that date,[5] they nevertheless

_____

        [4]Pursuant to 9 U.S.C. § 16(a)(1), defendants have taken an
interlocutory appeal from that portion of Judge Swain's Order
that denied their motion to compel arbitration (Notice of Appeal,
dated Oct. 8, 2013 (Docket Item 125 in 11 Civ. 9305) at 1).  That
appeal is currently pending.

        [5]The following exchange took place between defendants'
counsel and myself at the conference:

[Defendants' Counsel]:     Your Honor, we believe that this issue
                           goes to not whether individuals who are
                           absent from this case can be compelled
                           to arbitration at this point under the
                           FAA, but it goes to the power and the
                           ability of the Court in this collective
                           action to send notice and a consent to
                           join to individuals that are parties to
                           an arbitration agreement that this Court
                                                     (continued...)

claimed that the Federal Arbitration Act deprived the Court of jurisdiction to send notice to members of the collective who had signed the BAA.

After hearing extensive argument from both sides, I concluded that the opt-in notice should be sent to all FA's without regard to whether they had signed an arbitration agreement and without regard to which form of arbitration agreement they had signed.  The principal rationale for my decision was that, because they had not received notice or had an opportunity to be heard, the FA's who were not parties to the action at the time of Judge Swain's September 9, 2013 decision could not be bound by it.  Thus, there could not have been any finding that

---

[5](...continued)

|  | has already enforced -- |
|---|---|
| THE COURT: | Not with respect to the nonparties, it hasn't. |
| [Defendants' Counsel]: | It's the same agreement. |
| THE COURT: | Yeah, but they're not parties to the decision, they didn't have notice of it, they didn't have a chance to be heard, how can they be bound by it consistent with due process? |
| [Defendants' Counsel]: | They're not bound by it, they're not bound by this case at all. |

(Transcript of Conference held on October 28, 2013 (Docket Item 128 in 11 Civ. 9305) at 9).

any such non-parties were subject to a binding arbitration agreement.  In the absence of a finding that there was an en-forceable arbitration agreement as to all individuals who signed the BAA, I concluded that there was no legal obstacle to provid-ing the opt-in notice to all FAs.  My decision was memorialized in a summary Order dated October 29, 2013 (Docket Item 127 in 11 Civ. 9305).

Defendants filed objections to my decision (Docket Item 133 in 11 Civ. 9305).  Without discussion, Judge Swain rejected those objections in an Order dated December 19, 2013 (Docket Item 143 in 11 Civ. 9305).

III.  Analysis

    A.  Standards for
        1292(b) Certification

Title 28, United States Code, Section 1292(b) permits the certification of an order for interlocutory appeal if the District Court finds that (1)"such order involves a controlling question of law;" (2) "there is substantial ground for difference of opinion" as to that question, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ."  The party seeking certification of an order for interlocutory appeal bears burden of showing that all

three of the substantive requirements are met. <u>Casey v. Long</u>
<u>Island R.R. Co.</u>, 406 F.3d 142, 146 (2d Cir. 2005).

The overwhelming weight of authority in this Circuit
teaches that 1292(b) certification is appropriate only in excep-
tional cases.

> The Second Circuit has held that "interlocutory
> appeals are strongly disfavored in federal practice,"
> and movants cannot invoke the appellate process "as a
> vehicle to provide early review [even] of difficult
> rulings in hard cases," <u>In re Adelphia Commc'ns Corp.</u>,
> 2008 WL 361082, at *1 (S.D.N.Y. Feb.7, 2008). District
> Courts must accordingly "exercise great care in making
> a § 1292(b) certification," <u>Wausau Bus. Ins. Co.</u>, 151
> F. Supp. 2d at 491-92 (citing <u>Westwood Pharm., Inc. v.</u>
> <u>Nat'l Fuel Gas Dist. Corp.</u>, 964 F.2d 85, 89 (2d Cir.
> 1992)), ensuring that § 1292(b) "be strictly
> construed." <u>Wausau Bus. Ins. Co. v. Turner Constr.</u>
> <u>Co.</u>, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) (internal
> quotations marks and citations omitted); <u>see also</u> <u>In re</u>
> <u>Ambac Fin. Grp. Sec. Litig.</u>, 693 F. Supp. 2d 241, 282
> (S.D.N.Y. 2010) (certification of a non-final order
> pursuant to 28 U.S.C. § 1292(b) is an extraordinary
> procedure only granted in "exceptional
> circumstances."); <u>Lidle v. Cirrus Design Corp.</u>, 2010 WL
> 4345733, at *1 (S.D.N.Y. Oct. 29, 2010) ("[T]he power
> to grant an interlocutory appeal must be strictly
> limited to the precise conditions stated in the law . .
> . . [o]nly exceptional circumstances will justify a
> departure from the basic policy of postponing appellate
> review until after the entry of a final judgment.").

<u>In re Facebook, Inc., IPO Secs. & Derivative Litig.</u>, MDL No.
12-2389, 2014 WL 6621024 at *37 (S.D.N.Y., Dec. 12, 2013) (Sweet,
D.J.); <u>accord</u> <u>In re FLOR</u>, 79 F.3d 281, 284 (2d Cir. 1996);
<u>Laurent v. PricewaterhouseCoopers LLP</u>, 06 Civ. 2280 (JPO), 2014
WL 251986 at *1 (S.D.N.Y. Jan. 22, 2014) (Oetken, D.J.); <u>Carpen-</u>

ter v. City of New York, 11 Civ. 8414 (DLC), 2014 WL 559063 at
*12 (S.D.N.Y. Nov. 27, 2013) (Cote, D.J.).

An application for 1292(b) certification is committed
to the discretion of the District Court.  In re Roman Catholic
Diocese of Albany, N.Y., Inc., No. 13-4736-CV, 2014 WL 485948 at
*3 (2d Cir. Feb. 7, 2014).  "The legislative history, congressio-
nal design and case law indicate that district court judges
retain unfettered discretion to deny certification of an order
for interlocutory appeal even where the three legislative crite-
ria of section 1292(b) appear to be met."  Nat'l Asbestos Workers
Med. Fund v. Philip Morris, Inc., 71 F. Supp. 2d 139, 162
(E.D.N.Y. 1999) (Weinstein, D.J.); accord Laurent v.
PricewaterhouseCoopers LLP, supra, 2014 WL 251986 at *1.

     B.  Application of to
         the Facts of this Case


          1.  Controlling
              Question of Law


Defendants identify the controlling question of law as
"[t]he scope of this Court's jurisdiction and case management
authority over individuals with an arbitration agreement previ-
ously enforced by the court" (Memorandum in Support of Defen-
dants' Motion to Certify for Immediate Appeal, dated December 30,

2013, (Docket Item 151) ("Defs.' Mem.") at 4).  Defendants

statement of the question of law is inaccurate in that it omits

at least two critically important qualifiers:  (1) the "individu-

als" were not parties to any prior proceedings and not parties at

the time of Judge Swain's September 9, 2013 Memorandum Order, and

(2) the finding of enforceability was limited to five other

individuals who were parties at the time of the finding.

      To constitute a "controlling issue of law," and issue

need not be outcome determinative, Klinghoffer v. S.N.C. Achille

Lauro, 921 F.2d 21, 24 (2d Cir. 1990); rather, it is sufficient

if it is one "that may importantly affect the conduct of [the]

action."  In re Duplan Corp., 591 F.2d 139, 148 n.11 (2d Cir.

1978); accord Alphonse Hotel Corp. v. Tran, 13 Civ. 7859 (DLC),

2014 WL 516642 at *3 (S.D.N.Y. Feb. 10, 2014) (Cote, D.J.).  An

issue of law can also be "controlling" when its determination

"would materially affect the litigation's outcome," In re Enron

Corp., 06 Civ. 7828 (SAS), 07 Civ. 1957 (SAS), Adv. Proc. No. 05-

01025, 2007 WL 2780394 at *1 (S.D.N.Y. Sept. 24, 2007)

(Scheindlin, D.J.), or would have precedential value in a large

number of cases.  In re Hawker Beechcraft, Inc., Nos. 13 Misc.

373 (PKC), 12-11873 (SMB), Adv. Proc. No. 12-01890 (SMB), 2013 WL

6673607 at *4 (S.D.N.Y. Dec. 18, 2013) (Castel, D.J.).

Defendants first argue that resolution of the issue of who is entitled to notice will significantly affect the conduct of the litigation.  Defendants speculate that if notice is sent to all FAs there will be a substantial number of additional opt-in plaintiffs who will "overwhelm" the proceedings with individualized arguments concerning the enforceablility of the BAA (Defs.' Mem at 5).  I believe this scenario to be unlikely. Although no one can predict the future with certainty, based on the representations of plaintiffs' counsel with respect to their experience in other FLSA cases, I believe the most likely scenario is that less than 50% of the FAs who signed the BAA will opt to join the litigation.  There is no reason why the defendants cannot then make a single motion to compel arbitration with respect to all those opt-in plaintiffs, relying on Judge Swain's September 9, 2013 Memorandum Order and the opt-in plaintiffs' execution of the BAA.  Thereafter, a handful of the opt-in plaintiffs may mount individual arguments to try to avoid the consequences of September 9, 2013 decision.  Because a party challenging the enforceability of an arbitration agreement must make an evidentiary showing in order to avoid a summary order compelling arbitration, see Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995), it is likely that only an extremely small number of opt-in plaintiffs will survive a motion to compel

11

arbitration.  Put simply, the notion that the parties and the
Court will be caught up in litigating hundreds of individualized
enforceability arguments seems far-fetched.

Defendants next argue that if FAs who signed the BAA
opt in to the action, "[d]efendants will have been deprived of
the benefits of their arbitration agreement [and that] this
result cannot be undone by compelling arbitration of those
claims" (Defs.' Mem. at 6).  This argument is difficult to
understand and appears to makes sense only if defendants intended
their arbitration agreements to insulate them from the provisions
of the FLSA.  Unless he or she is able to attack the BAA success-
fully, any FA who signed the BAA and opts in will be compelled to
arbitrate in an individual arbitration proceeding -- the precise
result for which defendants bargained.  Contrary to defendants'
suggestion, there is nothing in Judge Swain's Order or my Order
that remotely suggests that such FAs can proceed on a class or
collective basis in arbitration.  In any event, whether or not
defendants are deprived of their perceived benefits under the
arbitration agreements does not make the issue "controlling"
within the meaning of Section 1292 under the alternative defini-
tions set forth above.

Defendants next claim that an immediate decision may
save the Court and the litigants substantial time and resources

(Defs.' Mem. at 6).  This argument is a reprise of defendants' first argument, discussed above.  Additionally, the time and expense needed to seek to compel arbitration would probably be less than the time and expense to litigate the issue before the Court of Appeals.  See Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc., supra, 71 F. Supp. 2d at 148-49

Fourth, defendants claim that a decision will have important precedential value (Defs.' Mem. at 7).  As discussed in more detail in the next section, both defendants' research and my own has revealed only one case that involves similar facts -- Delano v. MasTec, Inc., No. 8:10-320-T-27 (MAP), 2011 WL 2173864 (M.D. Fla. June 2, 2011).  Thus, the empirical evidence rebuts the suggestion that an appellate decision will have far reaching precedential value.  The factual background of this case also suggests that any precedent may be of limited impact.  The present dispute arises out of the fact that defendants had one class of employees -- FAs -- some of whom did not sign an arbi- tration agreement, some of whom signed an enforceable agreement -- the BAA -- and some of whom signed an unenforceable agreement. The dispute that exists here will recur only recur if there are other employers who use different forms of arbitration agreement

within a single class of employees.[6]  Defendants offer nothing to
suggest that there are many employers who follow this pattern.

Thus, defendants' arguments that an interlocutory
appeal would resolve a "controlling" question of law are uncon-
vincing, and the first element required for 1292(b) certification
has not been demonstrated.

### 2.  Substantial Ground for Difference of Opinion

"[F]or there to be 'substantial grounds for difference
of opinion,' the issue must involve more than strong disagreement
between the parties."  In re St. Clair, 13-mc-1057 (SJF), 2014 WL
279850 at *4 (E.D.N.Y. Jan. 21, 2014); quoting In re Perry H.

---

[6]Defendants argue that "[t]he huge number of collective
actions filed in this Court, as well as the rising number of
arbitration agreements with class and collective action waivers,
dictate that these issues will regularly recur for the district
courts" (Defs.' Mem. at 7 (footnote omitted)).  This argument
appears to misapprehend my October 29, 2013 Order.  That Order
did not address the enforceability of provisions in employment
agreements requiring arbitration or waiving the right to proceed
by way of a class or collective action.  There is a strong
federal policy favoring arbitration, Nitro-Lift Techs., L.L.C. v.
Howard, --- U.S. ---, 133 S.Ct. 500, 503 (2012), and nothing in
my October 29, 2013 Order is contrary to that policy.  My
October 29, 2013 Order addressed only whether non-parties in a
collective action were bound by decisions made before they became
parties to the action, an issue that arose only because
defendants utilized different forms of employment agreement for
the same class of employees.  My October 29, 2013 Order addressed
no other situation and has no application in any other situation.

Koplik & Sons, Inc., 377 B.R. 69, 74 (S.D.N.Y. 2007) (Marrero,

D.J.).

> "The mere presence of a disputed issue that is a ques-
> tion of first impression, standing alone, is insuffi-
> cient to demonstrate a substantial ground for differ-
> ence of opinion." In re Flor, 79 F.3d 281, 284 (2d
> Cir. 1996).  Rather, the district court must "analyze
> the strength of the arguments in opposition to the
> challenged ruling when deciding whether the issue for
> appeal is truly one on which there is a substantial
> ground for dispute." Id.

Capitol Records, LLC v. Vimeo, LLC, 09 Civ. 10101 (RA), 09 Civ.

10105 (RA), 2013 WL 6869648 at *10 (S.D.N.Y. Dec. 31, 2013)

(Abrams, D.J.) (emphasis in original).

A fundamental problem with defendants' argument is that

defendants never address the rationale for my October 29, 2013

Order, namely that FAs who were not parties when Judge Swain

issued her September 9, 2013 Memorandum Order cannot be bound by

it because they had no notice of the application to compel

arbitration and no right to be heard.  Rather, defendants have

drafted their arguments as if either all FAs were parties to the

action in September 2013.  Oddly, defendants treat Judge Swain's

September 9, 2013 Memorandum Order as if it were an Order issued

in a certified class action, despite the facts that (1) plain-

tiffs (according to defendants) waived their rights to litigate

their FLSA rights through a class action and (2) the non-party

FAs have never been afforded the procedural protections required by Fed.R.Civ.P. 23.

The requirement that a party must be afforded notice and a right to be heard before that party is bound by judicial action is a bedrock principle of United States jurisprudence, about which there can be no difference of opinion.  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.");  Wyly v. Weiss, 697 F.3d 131, 143 (2d Cir. 2012);  Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir. 1977).  Except to the extent permitted by the doctrine of stare decisis, a non-party is not bound by judicial action.  See NML Capital, Ltd. v. Republic of Argentina, 727 F.3d 230, 242 n.10 (2d Cir. 2013);  BlackRock Fin. Mgmt. v. Segregated Account of Ambac Assur. Corp., 673 F.3d 169, 177-78 (2d Cir. 2012);  Levin v. Tiber Holding Corp., 277 F.3d 243, 252 (2d Cir. 2002);  Alex Charts & Charts Ins. Assocs. v. Nationwide Mut. Ins. Co., 16 F. App'x 44, 46 (2d Cir. 2001) (summary order);  Staten Island Rapid Trans. Operating Auth. v. I.C.C., 718 F.2d 533, 542-43 (2d Cir. 1983);  Madison Square Garden Boxing, Inc. v. Shavers, 562 F.2d 141, 143-44 (2d Cir. 1977).  Defendants offer no arguments demonstrating that there are substantial grounds for a

difference of opinion with respect to the proposition FA's who were not parties as of September 9, 2013 are not bound by Judge Swain's Memorandum Order regardless of whether they signed the BAA.

Rather than address the central issue, defendants raise a number of other issues, all of which are unconvincing.

First, defendants claim other courts have refused to send notice to individuals who had signed agreements that would have precluded their participation in the case (Defs.' Mem at 9-10). In support of this proposition, defendants cite three cases. The first two cases, Clausnitzer v. FedEx Corp., 248 F.R.D. 647 (S.D. Fla. 2008) and Spann v. AOL Time Warner, Inc., 219 F.R.D. 307 (S.D.N.Y. 2003), involved attempts to certify Rule 23 classes consisting of hourly employees of Federal Express and the beneficiaries of retirement plans, respectively. Neither case is material to the issue of who is entitled to notice of the conditionally certified collective action because the standards for Rule 23 class certification, the consequence of which is to bind absent parties, are substantially more stringent than the standards for 216(b) conditional certification, the only consequence of which is to provide notice to absent potential parties. "Whatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification

17

under Rule 23." <u>Genesis Healthcare Corp. v. Symczyk</u>, --- U.S. ---, 133 S. Ct. 1523, 1532 (2013); <u>accord</u> <u>Fracasse v. People's United Bank</u>, Civil Action No. 3:12-CV-670 (JCH), 2013 WL 3049333 at *1 (D. Conn. June 17, 2013) ("In the Second Circuit, the legal standard for conditionally certifying FLSA collective actions is distinct from the legal standard for certifying Rule 23 class actions."). As explained in <u>Forauer v. Vermont Country Store, Inc.</u>, No. 5:12-cv-276, 2013 WL 3967932 at *3 n.2 (D. Vt. July 31, 2013):

> "Unlike class action suits brought pursuant to Fed.R.Civ.P. 23, only potential plaintiffs who 'opt in' may be bound by or benefit from the judgment in a[ ] FLSA collective action. In this way, Section 216(b) creates a device less like a Rule 23 class action and more like permissive joinder, allowing all employees similarly situated to join their cases in one action." <u>Lee v. ABC Carpet & Home</u>, 236 F.R.D. 193, 196 (S.D.N.Y. 2006) (internal citations omitted). The "requirements of Fed.R.Civ.P. 23 do not apply to the approval of a [FLSA] collective action and thus 'no showing of numerosity, typicality, commonality and representative-ness need be made.'" <u>Young v. Cooper Cameron Corp.</u>, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (quoting <u>Foster v. The Food Emporium</u>, 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000)); <u>see also</u> <u>Lynch [v. United States Servs. Auto Ass'n</u>, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007)](same). "As a result, the 'similarly situated' standard for certifying a 216(b) collective action is considerably more liberal than class certification under Rule 23." <u>Lynch</u>, 491 F. Supp. 2d at 369; <u>see also</u> <u>Iglesias-Mendoza v. La Belle Farm, Inc.</u>, 239 F.R.D. 363, 367-68 (S.D.N.Y.2007).

<u>See also</u> <u>Puglisi v. TD Bank, N.A.</u>, No. CV 13-00637 (LDW)(GRB), 2014 WL 702185 at *2 (E.D.N.Y. Feb. 25, 2014) ("A collective

action under the FLSA is different from the typical class action
under the Federal Rules of Civil Procedure, the strict require-
ments of which -- numerosity, commonality, typicality, and
adequate representation -- do not apply to a collective ac-
tion."); see also Ahmed v. T.J. Maxx Corp., No. 10-CV-3609
(ADS)(ETB), 2013 WL 2649544 at *7 (E.D.N.Y. June 8, 2013) ("A
collective action under Section 216 is distinguishable in several
ways from the more common class action under [Federal Rule of
Civil Procedure] 23 . . . . [A] party seeking conditional
certification of a collective action need not demonstrate the
Rule 23 requirements of numerosity, commonality, typicality, and
adequacy of representation."). Because the courts in Clausnitzer
and Spann were applying different, more demanding standards, the
results reached in those cases do not demonstrate a disagreement
with the result reached in this case.

The third case on which defendants rely is Delano v.
MasTec, Inc., supra, 2011 WL 2173864 (M.D. Fla. June 2, 2011), in
which the Court found that the fact that potential opt-in plain-
tiffs had signed arbitration agreements was fatal to a claim that
they were similarly situated to plaintiffs who had not signed
such agreements. Defendants' citation to Delano is unconvincing
for several reasons. First, Delano applied a more stringent
standard at the conditional certification stage than is applied

19

in this Circuit.  D'Antuono v. C & G of Groton, Inc., 3:11cv33
(MRK), 2011 WL 5878045 at *4-*5 (D. Conn. Nov. 23, 2011).
Second, it is contrary to the precedent in this District which
holds that the existence of an arbitration agreement is irrele-
vant at the conditional certification stage.  Romero v. La Revise
Assocs., L.L.C., 12 Civ. 8324 (JMF)(GWG), 2013 WL 5041458 at *6
(S.D.N.Y. Sept. 16, 2013) (Gorenstein, M.J.); Hernandez v.
Immortal Rise, Inc., 11 CV 4360 (RRM)(LB), 2012 WL 4369746 at *5
(E.D.N.Y. Sept. 24, 2012) D'Antuono v. C & G of Groton, Inc.,
supra, 2011 WL 5878045 at *13 (collecting cases).  Finally,
although I have the highest respect for every District Court in
the United States, I submit that a single District Court decision
from another Circuit that is inconsistent with my own decision
and the weight of authority in this Circuit does not give rise to
a substantial ground for a difference of opinion.

        Defendants next argue that there is a substantial basis
for a difference of opinion as to the correctness of my October
29 Order because, by virtue of the Federal Arbitration Act
("FAA"), 9 U.S.C. §§ 1, et seq., the Court lacks the power to
require that notice be sent to individuals who have signed
arbitration agreements.  The premise for this argument appears to
be defendants' belief that the presence of an arbitration clause
that may be applicable to a dispute, without more, deprives the

20

court of jurisdiction to hear an action arising out of the dispute; as stated by defendants, "[t]he FAA defines and limits the Court's jurisdiction with respect to claims subject to an arbitration agreement" (Defs. Mem. at 10).

Although there can be no question that the FAA limits a federal court's power when the affirmative defense[7] of arbitration has been properly asserted, there really can be no difference of opinion that the existence of an arbitration agreement, prior to its proper invocation, does <u>not</u> deprive a federal court of jurisdiction to hear a dispute covered by the agreement.

It is beyond question that the existence of an arbitration agreement is an affirmative defense that is waived by a party's failure to assert the defense and the party's in the litigation. <u>Tech. in P'ship, Inc. v. Rudin</u>, 538 F. App'x 38, 39 (2d Cir. 2013) (summary order), <u>citing In re Crysen/Montenay Energy Co.</u>, 226 F.3d 160, 162 (2d Cir. 2000) <u>and PPG Indus., Inc. v. Webster Auto Parts, Inc.</u>, 128 F.3d 103, 107 (2d Cir. 1997). If as, defendants claim, the existence of an arbitration agreement alone deprives the court of subject matter jurisdiction -- even before the defense was properly invoked in response to a claim -- this waiver could not occur.  If defendants were cor-

---

[7]Fed.R.Civ.P. 8(c)(1) expressly designates arbitration as an affirmative defense.

rect, the existence of the arbitration agreement, by itself, would deprive the court of subject matter jurisdiction, and neither the parties' waiver nor their consent could cure that defect. Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 851 (1986) (subject matter jurisdiction cannot be created by waiver or consent); United States v. Griffin, 303 U.S. 226, 229 (1938) (same). Because this result is inconsistent with the binding precedent that teaches that arbitration is a waivable defense, logic dictates that defendants' premise must be incorrect.

Finally, defendants claim that there are substantial grounds for a difference of opinion as to whether the Order violates the FAA (Defs.' Mem. at 12-13). Again, defendants' argument assumes that their arbitration agreements are enforceable as to the opt-in plaintiffs. For the reasons discussed above at pages 6, there is, presently, no determination as to whether FAs who were not parties as of September 9, 2013 are subject to an enforceable arbitration agreement. Until that determination is made, there is no issue concerning the possible violation of the FAA.

3.   Advancement of the Ultimate
     Termination of the Litigation
     <u>and Promotion of Judicial Economy</u>

Finally, defendants have failed to demonstrate that an interlocutory appeal will advance the ultimate termination of the litigation or promote judicial economy.  As noted above, defendants have already taken an interlocutory appeal from that portion of Judge Swain's September 9 Memorandum Order that denied their motion to compel arbitration with respect to those FA's who signed the Agreement.  Given the delay that those proceedings will entail, the time required to provide notice to FA's who signed the BAA and to obtain responses will not materially delay the litigation.  In addition, because there are several hundred FA's who never signed any form of arbitration agreement, the action will proceed even if defendants prevail in persuading the Court of Appeals to reverse that portion of Judge Swain's September 9 Memorandum Order that denied defendants' motion to compel arbitration.  In light of these facts, I believe that permitting an interlocutory appeal will only add to the delay of the resolution of the action.

IV.   Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that Defendants' motion for certification pursu-
ant to 28 U.S.C. § 1292(b) be denied in all respects.

V.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c)) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Laura Taylor Swain, United States District Judge, 500 Pearl
Street, Room 1320, and to the Chambers of the undersigned, 500
Pearl Street, Room 750, New York, New York 10007.  Any requests
for an extension of time for filing objections must be directed
to Judge Swain.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL**
RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE
REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States
v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO
Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank
v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

24

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        April 1, 2013

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Rachel M. Bien, Esq.
Adam T. Klein, Esq.
Deirdre A. Aaron, Esq.
Outten & Golden, LLP
29th Floor
3 Park Avenue
New York, New York  10016

John Halebian, Esq.
Adam Mayes, Esq.
Lovell Stewart Halebian
    Jacobson LLP
Suite 501
61 Broadway
New York, New York  10006

Edward P. D'Alessio, Esq.
Winne, Banta, Hetherington,
    Basralian & Kahn, P.C.
Suite 101
Court Plaza South - East Wing
21 Main Street
P.O. Box 647
Hackensack, New Jersey  07601

Kenneth K. Lehn, Esq.
Greenberg Margolis, P.C.
Three A.D.P. Boulevard
Roseland, New Jersey  07068

Samuel Shaulson, Esq.
Thomas A. Linthorst, Esq.
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, New Jersey  08540