# Morgan Lewis

Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
Tel. +1.212.309.6000
Fax: +1.212.309.6001
www.morganlewis.com

**Thomas A. Linthorst**
609-919-6642
tlinthorst@morganlewis.com

June 19, 2015

**VIA ECF**

The Honorable Henry Pitman
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Lloyd, et al. v. JPMorgan Chase & Co., et al.*, **Case No. 1:11-cv-09305 (LTS) (HBP)**

Dear Judge Pitman:

We represent Defendants in the above matter and write in further support of Defendants' request that they be permitted to serve the limited discovery requests attached to their June 2, 2015 Letter.[1]

**Defendants' RFAs Seek Relevant Information Based On The Opt-Ins' Personal Knowledge**

Plaintiffs do not dispute that the Requests for Admission ("RFAs") are directly relevant to the case. In fact, they are directly relevant to whether the individual financial advisor ("FA") performed the job duties that the Department of Labor says are exempt from overtime with respect to financial advisors. 29 C.F.R. § 541.203(b); U.S. Dept. Of Labor Opinion Letter, FLSA 2006-43, dated November 27, 2006, 2006 DOLWH LEXIS 57.

The objections contrived by Plaintiffs' counsel are baseless. There is no evidence from a single Opt-In that responding to these RFAs would be burdensome. The first three RFAs simply ask to confirm that the FA advised clients and prospective clients in a manner consistent with his or her obligations under FINRA or NASD rules. *See* RFAs Nos. 1-3. Plaintiffs offer no reason to believe that an FA would not immediately know whether they complied with regulatory rules that they were obligated to study and be tested on to obtain their licenses. In fact, each of the three FAs deposed in this case was able to testify under oath that he did comply with such rules, without any burden or review of any of the documents that Plaintiffs now claim are necessary. *See* Ciullo Dep. 129:13-130:15 ("Q. And did you abide by [NASD 2310] throughout your employment at Chase? A. Yes,

---

[1] Plaintiffs have not objected to Defendants' Interrogatory Nos. 4-8, and 10 and Document Request Nos. 2, 3 (with respect to documents other than telephone records), 5(a), 5(d), 5(e), 5(f), 6 (with respect to W-2s, pay statements and 1099s) and 7, and those requests should be deemed proper.

Almaty  Astana  Beijing  Boston  Brussels  Chicago  Dallas  Dubai  Frankfurt  Harrisburg  Hartford  Houston  London  Los Angeles  Miami  Moscow
New York  Orange County  Paris  Philadelphia  Pittsburgh  Princeton  San Francisco  Santa Monica  Silicon Valley  Tokyo  Washington  Wilmington

**Morgan Lewis**

The Honorable Henry Pitman
June 19, 2015
Page 2

I did. Q. And so in each recommendation that you made to a Chase client or prospective client, did you have reasonable grounds for believing that the recommendation was suitable for the customer based on the . . . facts disclosed by the customer? A. Yes."); Lloyd Dep. 103:12-106:15; Strouse Dep. 152:7-153:13, 168:9-169:17 (*see* Ex. A).

Defendants' remaining RFAs likewise do not impose any undue burden or necessitate a review of documents. Rather, they simply ask the Opt-Ins to confirm whether they: (a) collected and analyzed information regarding customers' income, assets, investments or debts; (b) determined which financial products best met customers' needs and financial circumstances; (c) advised customers regarding the advantages and disadvantages of different financial products; (d) marketed, serviced, or promoted Chase or its financial products or services; (e) met with a customer or prospective customer at a location outside their home or the Chase bank branch; or (f) had responsibility for one or more business client. RFAs Nos. 4-9, respectively. These requests do not ask about every single client or transaction, and this information is well within the Opt-In's personal knowledge. Opt-ins are more than willing to sign self-serving declarations drafted by counsel about their job duties at CISC (Dkt Nos. 64-7 through 64-19), but as soon as Defendants seek information that may not be helpful to Plaintiffs' counsel's theory, they claim they should not have to respond at all, or cannot respond without reviewing every scrap of paper from their employment.[2]

In addition, Defendants are not demanding responses to 900 RFAs, but rather request that each Opt-In respond to the same, narrowly-tailored nine requests. Plaintiffs' contention that the Pilot Project precludes such a practice is akin to claiming that Rule 33 prohibits Defendants from serving any more than 25 interrogatories *total* in this case.[3] Such limits are not applicable or must yield where there are 100 party plaintiffs asserting their own claims for relief.

Finally, although Defendants initially contemplated 15 document requests and 15 interrogatories, they have scaled back those requests and substituted a few RFAs, for a total of only 29 requests.

**Defendants' Document Requests And Interrogatories Seek Relevant Information**

After reviewing Defendants' original, proposed discovery, the Court noted that Defendants sought information that "is clearly relevant," "is clearly not in their possession," and which addresses "not only whether plaintiffs are similarly situated but also the calculation of damages…and the identification of relevant documents and witnesses." Order 10-11, 16. This holding included Defendants' requests regarding the Opt-Ins': (a) duties, responsibilities, compensation and work hours; (b) other sources of income and attempts to seek employment during their employment with

---

[2] Notably, in a case cited by Plaintiffs, the Court found that a party's objections to RFAs on the grounds that, *inter alia*, they required the review of documents to ensure the provision of "reliable and accurate responses" were unfounded and that the RFAs were proper. *Jewell v. Aaron's, Inc.*, 2013 WL 3770837, **1-2 (N.D. Ga. July 19, 2013).

[3] Plaintiffs' objection that the RFAs should not exceed 25 words is baseless because shortening them would make them broader or less clear. The RFAs are written to mirror the language of the applicable rules and/or to clarify the request so as to avoid any unnecessary vagueness objections. For instance, RFA Nos. 4-7, at only 28 words each, would easily fall within the limits cited by Plaintiff simply by removing "as an FAA or FA," yet Plaintiffs would inevitably object on the grounds that the RFAs were not reasonably limited to in-scope positions.

**Morgan Lewis**

The Honorable Henry Pitman
June 19, 2015
Page 3

Defendants; (c) involvement in other litigation; (d) calculation of damages; and (e) communications regarding the issues in this case. *Id.* at 10. Nonetheless, Plaintiffs continue to object to Defendants' requests seeking such information.

Each of the items sought by Defendants' requests and objected to by Plaintiffs falls under one of the enumerated categories above. For example, the Opt-Ins' personal phone records (Doc. Req. No. 3) reflect the times at which they could not have been working because they were making personal telephone calls, and also may reflect their location during the work day, which is relevant to whether they performed some of their duties outside the branch, which would support Defendants' alternative defense of the outside sales exemption. Doc. Req. No. 3. Similarly, documents relating to other sources of income during their employment with CISC is relevant to the Opt-Ins' ability to have worked any claimed overtime hours for Defendants, while any documents and information relating to their involvement in other litigation relates directly to their credibility (*see* F.R.E. 601) and other issues (*e.g.*, bankruptcy may render the claim the property of the estate). Doc. Req. Nos. 6, 8; Int. No. 11. Such requests are repeatedly granted in matters such as these, including recently in another case where class certification of overtime claims by CISC FAs was denied.[4]

Plaintiffs also seek to avoid producing directly relevant information – the Opt-Ins' own descriptions of their duties or employment at CISC – on the grounds that the requests are unduly burdensome and duplicative of information found in other sources. Specifically, they object to producing any loan or mortgage applications, web site postings, or social media profiles containing such descriptions. Doc. Req. No. 5(b), (c), (f). There has been no showing of burden – each of these documents likely can be collected in a matter of minutes – nor that the information from these sources is duplicative. Defendants have already received website postings that contain the FA's own highly relevant description of their job duties at CISC (see Ex. B). And loan applications and tax returns likely will be a source of accurate information given the certifications that accompany such documents, which are lacking in other documents. Any sensitive, irrelevant information can be redacted and the document can be further protected through the protective order.

Additionally, identifying employers to whom the FA applied during or after their CISC employment will identify custodians of additional relevant documents (resumes and applications by the FA to those entities describing their CISC job duties). Int. No. 9.[5] Finally, the FA's licenses and educational history are directly relevant to the professional exemption from overtime, as well as their work hours if they took the courses during their CISC employment.

Defendants agree that Opt-Ins need not produce their own paystubs or documents that Defendants indisputably already have. Defendants respectfully request that they be permitted to serve their proposed discovery requests on the 100 Opt-Ins subject to discovery under the Court's Order.

---

[4] *Alakozai v. CISC*, No. 2:11-cv-09178-SJO-JEM (Dkt No. 125) (telephone records, tax returns, and records of other litigation were highly relevant); *Kamalu v. Wal-Mart Stores, Inc.*, 2013 WL 4403903, at *2 (E.D. Cal. Aug. 15, 2013) (plaintiff's incoming and outgoing cell phone records were directly relevant to whether plaintiff took breaks).

[5] To the extent Defendants subpoena any records from a third party, Defendants will provide Plaintiffs with advanced notice of such intent consistent with the Federal Rules.

# Morgan Lewis

The Honorable Henry Pitman
June 19, 2015
Page 4

Respectfully submitted,

Thomas A. Linthorst

cc:     All counsel of record via ECF